# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**CLAUDIA G. COTE, M.D.,**
**et al.,**

       **Plaintiffs,**

**v.**                          **Case No. 8:07-cv-1524-T-TBM**

**ERIC K. SHINSEKI, Secretary,**
**DEPARTMENT OF VETERANS**
**AFFAIRS,[1]**

       **Defendant.**

                                /

## O R D E R

THIS MATTER is before the court on **Defendant's Motion for Summary Judgment or Partial Summary Judgment and Memorandum in Support** (Doc. 51) and Plaintiffs' response thereto (Doc. 59).[2] By the instant motion, Defendant seeks entry of summary judgment in his favor as to all of the claims raised in Plaintiffs' Amended Complaint.[3] In their

---

[1]The case was first instituted against R. James Nicholson who was the Secretary for the Department of Veterans Affairs at the time of filing the initial complaint in August 2007. He was succeeded by James Peake. Mr. Shinseki became the Secretary on January 21, 2009.

[2]Additionally, the parties filed separate statements of facts, as well as exhibits, affidavits, depositions and other documents in support of their positions. *See* (Docs. 51-2 to -34, 52, 61, 63-2 to -103).

[3]The Amended Complaint raises seven counts: retaliation under Title VII, gender discrimination and disparate impact under Title VII, preliminary and permanent injunctions, religious discrimination of Dr. Gowski, racial discrimination of Dr. Zachariah, age discrimination of Dr. Zachariah, and violations of the Fair Labor Standards Act on behalf of Ms. Lainhart. (Doc. 23).

response in opposition and at hearings before the court, Plaintiffs indicate that the claims still at issue in the case are all the Plaintiffs' claims for retaliation by discrete acts, through a hostile work environment based on retaliatory harassment, and by a pattern or practice of retaliation; their claims for gender discrimination; and Dr. Gowski's religious discrimination claim. Additionally, Roxanne Lainhart's Fair Labor Standards Act claim remains at issue. Oral arguments on the motion were heard May 20, 2009.

## I.

### A.

Plaintiffs are federal employees working at the Bay Pines VA Healthcare System ("Bay Pines") in St. Petersburg, Florida. Dr. Claudia Cote ("Cote") is a board certified pulmonologist who has worked at Bay Pines since August 1996. Dr. Diane Gowski ("Gowski") is board certified in critical care medicine and internal medicine and was employed as a hospitalist at Bay Pines from 1997 to 1999 and from August 2002 until the present. Dr. Sally Zachariah ("Zachariah") is a board certified neurologist employed at Bay Pines since 1989. Ms. Roxanne Lainhart ("Lainhart") began her employment at Bay Pines in August 1995. Pertinent to this case, she served as the Administrative Officer for the Medicine Service from March 2005 through March 2007 when she went to work in the Business Office.

Bay Pines is a Veteran's Administration ("VA") hospital and medical center with related services. At pertinent times, the Medical Center Director was Mr. Wallace Hopkins ("Hopkins"). The Chief of Staff was Dr. George Van Buskirk ("Van Buskirk") who had line

of authority over several medical services within the hospital, including the Medicine, Surgical, Geriatrics and Extended Care, Primary Care, and Mental Health Services.  Dr. Lithium Lin ("Lin") was the Chief of Medicine Service.[4]  Dr. Sharachandra Patel ("Patel") was the Chief of Hospitalists.  As chief of staff, Van Buskirk had line authority over Lin, Patel, and the Plaintiffs.  Lin had line authority over Patel and the Plaintiffs; Patel had line authority over Plaintiff Gowski.

B.

Plaintiffs broadly assert that there is a pattern and practice at Bay Pines to punish employees for filing equal employment opportunity ("EEO") claims and to deter others from filing such claims by retaliating against those employees who engage in EEO activity. Plaintiffs contend that their supervisors at Bay Pines engaged in deliberate and continuous acts of retaliation against them because of their EEO activities resulting in adverse employment actions to include their removal from leadership positions and significant committee positions, having their medical duties and privileges reduced, being wrongfully subject to investigations, suffering the suspension of their research activities/privileges, the lowering of their performance evaluations/ratings, being moved into smaller out of the way offices, reprimands, suspension from employment, and decreases in their pay.

On their claims for gender discrimination, Plaintiffs again assert broad-based discrimination against women at Bay Pines.  They claim such is particularly evidenced by the

---

[4]Pertinent to this case, Medicine Service oversaw sections for cardiology, pulmonology, neurology, emergency medicine, and hospitalists among others.

lack of women in leadership roles. They claim adverse actions on the basis of gender including the denial of equal employment opportunity for wages, promotions, and leadership positions by Defendant because of their gender. They claim proof that Lin applies a stereotypical approach to people on the basis of their gender and race and that such was manifested by the number of male employees assigned to positions they held or sought.[5]

By her claim for religious discrimination, Gowski asserts that she was transferred out of the ICU and, ultimately, into the least intensive ward and removed as chairperson of the Critical Care Committee because of the "pro-life" beliefs she holds as a Roman Catholic. Additionally, she alleges she was refused authorized absence to attend an annual Catholic Medical Association conference of physicians.

Initially, the VA contends on this motion that certain of Plaintiffs' claims fail because they are time-barred by reason of a failure to exhaust. Thus, as to Gowski's claim of retaliation in connection with the August 2007 suspension, Defendant argues that she failed to contact an EEO counselor regarding this alleged discriminatory act, and her failure to do so mandates dismissal. Similarly, as to Zachariah's September 2007 suspension, Defendant urges the action was not raised with an EEO counselor, and therefore, her claim was not administratively exhausted. Additionally, Cote's failure to complain to an EEO counselor and pursue her claim in 2004 regarding the alleged "pre-selection" of Lin as the Chief of Medicine Services bars that claim.

---

[5]As set forth below, the claims for gender discrimination have been substantially narrowed by the Plaintiffs. Lainhart's gender claim is now said to be a "gender plus" type case as well as a claim for retaliation.

While Defendant concedes that the Plaintiffs may rightfully claim to have some direct evidence of retaliation and Gowski may have some direct proof on her religious discrimination claim, it argues that summary judgment is nonetheless appropriate where the undisputed evidence shows that it would have made the same decision anyway. On those claims for which Plaintiffs rely on circumstantial evidence, it urges that upon close analysis under the *McDonnell Douglas*[6] proof standard, the claims fail due to Plaintiffs' inability to prove a *prima facie* case, and/or Plaintiffs' failure to establish that the stated reasons for the VA's employment decisions were a pretext for discrimination.

As for Lainhart, it urges that she has no disparate treatment claims as she suffered no adverse employment action. As to the purported claim for hostile work environment, the VA urges that Plaintiffs fail to demonstrate the requisite severe and pervasive conduct necessary to support such claims. Insofar as the claim is based on the theory of retaliatory hostile work environment, it urges that there is no such claim recognized in the Eleventh Circuit.[7] On Lainhart's claim under the FLSA, it argues that Lainhart never requested either comp time or overtime, a prerequisite before an employee can work the additional time. In any event, her relief would be limited by the Little Tucker Act, 28 U.S.C. § 1346, to $10,000 or less.

---

[6]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[7]While acknowledging that the Ninth Circuit in *Ray v. Henderson*, 217 F.3d 1234, 1244-45 (9th Cir. 2000) recognized a retaliatory hostile workplace claim, Defendant urges that no such claim has been expressly recognized by the Eleventh Circuit, and in any event Lainhart did not contact an EEO counselor until March 9, 2007, and much of the conduct of which she complains occurred prior to this date.

II.

A.

Under Rule 56, the court shall grant summary judgment for the moving party only when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court may look to "the pleadings, the discovery and disclosure materials on file, and any affidavits" in determining whether summary judgment is appropriate. Fed. R. Civ. P. 56(c). The movant bears the exacting burden of demonstrating that there is no dispute as to any material fact in the case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993).

Once the moving party satisfies its burden, the burden shifts to the non-moving party to establish the existence of a genuine issue of material fact. *Celotex*, 477 U.S. at 324; *Howard v. BP Oil Co.,* 32 F.3d 520, 524 (11th Cir. 1994). The non-movant must designate specific facts showing a genuine issue for trial beyond mere allegations or the party's perception. *Perkins v. Sch. Bd. of Pinellas County*, 902 F. Supp. 1503 (M.D. Fla. 1995). It must set forth, by affidavit or other appropriate means, specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e).

When deciding a motion for summary judgment, "[i]t is not part of the court's function . . . to decide issues of material fact, but rather determine whether such issues exist to be tried . . ." and "[t]he court must avoid weighing conflicting evidence or making credibility determinations." *Hairston*, 9 F.3d at 919 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242 (1986)).  The only determination for the court in a summary judgment proceeding is

whether there exists genuine and material issues of fact to be tried.  *Hairston*, 9 F.3d at 921;

*see also Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir. 1997).

All the evidence and inferences from the underlying facts must be viewed in the light most

favorable to the nonmoving party.  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1526 (11th

Cir. 1997).

B.

Plaintiffs claim direct and circumstantial evidence of discrimination as well as pattern

and practice of the same.  In a Title VII discrimination case, a plaintiff may establish a *prima*

*facie* case of discrimination through direct or circumstantial evidence.  *See Combs*, 106 F.3d

at 1527; *Bush v. Barnett Bank of Pinellas County*, 916 F. Supp. 1244, 1251-52 (M.D. Fla.

1996).  The Eleventh Circuit has defined "direct evidence" as "evidence which, if believed,

proves the existence of [a] fact in issue without inference or presumption."  *Burrell v. Bd. of*

*Trs. of Ga. Military Coll.*, 125 F.3d 1390, 1393 (11th Cir. 1997); *Wilson v. B/E Aerospace,*

*Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004).[8]  It is "evidence which reflects 'a discriminatory

or retaliatory attitude correlating to the discrimination or retaliation complained of by the

employee.'"  *Wilson*, 376 at 1086 (quoting *Damon v. Fleming Supermarkets of Fla., Inc.*, 196

F.3d 1354, 1358 (11th Cir. 1999)).  In other words, "only the most blatant remarks, whose

---

[8]Judge Tjoflat has described direct evidence in the context of employment discrimination to mean "evidence from which a reasonable trier of fact could find more probably than not, a causal link between an adverse employment action and a protected personal characteristic."  *Wright v. Southland Corp.*, 187 F.3d 1287, 1293 (11th Cir. 1999).

intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Id.* (citations omitted).

If a plaintiff is unable to present direct evidence of discrimination, she may rely on circumstantial evidence. *See McDonnell Douglas*, 411 U.S. at 802; *Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1267 (11th Cir. 2001). Here, Defendant submits that Plaintiffs' Title VII claims must be assessed by the *McDonnell Douglas* framework. In light of their claim of pattern and practice and mixed-motive, Plaintiffs contend that the *McDonnell Douglas* framework is inapplicable to their claims. Notwithstanding, Plaintiffs submit that even if the *McDonnell Douglas* framework were to apply, they have satisfied their burdens. Under this model, the initial burden rests on the plaintiff to establish, by a preponderance of the evidence, a *prima facie* case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802. To establish a *prima facie* case of gender discrimination, a plaintiff must show that she was a qualified member of a protected class who was subjected to an adverse employment action,[9] and similarly situated employees outside the protected class were treated more favorably.[10]

---

[9]An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000), *abrogation on other grounds recognized by Crawford v. Carroll*, 529 F.3d 961 (11th Cir. 2008). The employer's action must impact the terms, conditions, or privileges of the employee's job in a "real and demonstrable" or "serious and material" way." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001). Moreover, the employment action must be materially adverse from a subjective and objective standpoint under all the facts and circumstances. *Id.*

[10]"In determining whether employees are similarly situated for purposes of establishing a *prima facie* case, it is necessary to consider whether the employees are involved in or

*Wilson*, 376 F.3d at 1087. Plaintiffs need only to establish facts adequate to permit an inference of discrimination. *See Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citation omitted).[11]

Once the *prima facie* case establishes a presumption of discrimination, the burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993). At this point, the plaintiff may present evidence to demonstrate that the proffered reason was pretextual. *Howard*, 32 F.3d at 525. To prove the employer's reason for the adverse employment action is pretextual, an employee may show that (1) it is more likely the employer was motivated by a discriminatory reason or (2) the employer's explanation of the discharge is not trustworthy. *See id.*; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000). "[A] plaintiff is entitled to survive summary judgment, and judgment as a matter of law, if there is sufficient evidence to demonstrate the existence of a genuine issue of

_____

accused of the same or similar conduct and are disciplined in different ways." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) (quoting *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 (11th Cir.), *opinion modified by* 151 F.3d 1321 (11th Cir. 1998). In making this determination, the most important facts are the nature of the offenses committed and the nature of the punishments imposed. *Id.* While an exact correlation is not required, the quantity and quality of the comparator's conduct should be nearly identical so that the court does not second-guess the employer's reasonable decisions and confuse apples with oranges. *Id.* (citing *Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 13, 19 (1st Cir. 1998)).

[11]Where the claim is for religious discrimination, the plaintiff must prove (1) she had a bona fide religious belief that conflicted with an employment requirement, (2) she informed her employer of her belief, and (3) she was subjected to an adverse employment action because of such beliefs. *Beadle v. Hillsborough County Sheriff's Dep't,* 29 F.2d 589, 592 n.5 (11th Cir. 1998).

fact as to the truth of each of the employer's proffered reasons for its challenged actions."

*Latham v. Dep't of Children and Youth Servs.*, 172 F.3d 786, 793 (11th Cir. 1999) (quoting

*Combs*, 106 F.3d at 1529); *Howard*, 32 F.3d at 525.

## C.

To establish a *prima facie* case of retaliation, each Plaintiff must show (1) that she

engaged in statutorily protected expression;[12] (2) she suffered an adverse employment action;

and (3) the adverse employment action was causally related to her protected activities. 42

U.S.C. § 2000e-3(a); *Stavropoulos v. Firestone*, 361 F.3d 610, 616 (11th Cir. 2004); *Shotz v.

City of Plantation, Fla.*, 344 F.3d 1161, 1180 (11th Cir. 2003); *Johnson v. Booker T.

Washington Broad. Serv., Inc.*, 234 F.3d 501, 507 (11th Cir. 2000); *Gupta*, 212 F.3d at 587.

To establish a causal connection, a plaintiff must show that the decision makers were aware of

the protected conduct and that the protected activity and the adverse action were not wholly

unrelated. *Gupta,* 212 F.3d at 590. Close temporal proximity between the protected activity

and the adverse employment action may be sufficient to show that the two were not wholly

unrelated. *Id*. If the plaintiff establishes a *prima facie* case of retaliation, the burden shifts to

the defendant to articulate legitimate reasons for the adverse employment action. *Johnson*,

234 F.3d at 507. If the defendant does so, the plaintiff must demonstrate that the reasons the

defendant gave were pretextual. *Id.*

---

[12]Protected expression involves opposing an employment practice made unlawful
under Title VII. 42 U.S.C. § 2000e-3(a). "Statutorily protected expression" includes internal
complaints of harassment to superiors, as well as complaints filed with the EEOC. *Pipkins v.
City of Temple Terrace, Fla.*, 267 F.3d 1197, 1201 (11th Cir. 2001).

In order to withstand summary judgment, a plaintiff is not required to prove pretext. *See St. Mary's Honor Ctr.*, 509 U.S. at 511 (1993); *Maddow v. Proctor & Gamble Co.*, 107 F.3d 846, 851 (11th Cir. 1997); *Harris v. H&W Contracting Co.*, 102 F.3d 516, 521 (11th Cir. 1996). Instead, a plaintiff must only present "evidence sufficient to demonstrate a genuine issue of material fact as to the truth or falsity of the employer's legitimate, nondiscriminatory reasons." *Evans v. McClain of Ga., Inc.*, 131 F.3d 957, 964-65 (11th Cir. 1997); *see also Hairston*, 9 F.3d at 921.

The Eleventh Circuit has held that "Title VII's protection against retaliatory discrimination extends to adverse actions which fall short of ultimate employment decisions." *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998). "While 'not everything that makes an employee unhappy is an actionable adverse action,' . . . conduct that alters an employee's compensation, terms, conditions, or privileges of employment does constitute an adverse action under Title VII." *Bass v. Bd. of County Com'rs, Orange County, Fla.*, 256 F.3d 1095, 1118 (11th Cir. 2001) (quoting *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996), and citing *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1283 (11th Cir. 1999)). Moreover, while some adverse actions may not individually rise to the level of an adverse employment action under Title VII, the court may consider adverse actions collectively to determine whether the totality of the alleged actions rise to a level of substantiality to constitute unlawful retaliation. *See Shannon v. Bellsouth Telecomms.*, Inc., 292 F.3d 712, 716 (11th Cir. 2002); *Bass*, 256 F.3d at 1118-19; *Wideman*, 141 F.3d at 1456.

III.

A.

Defendant initially urges that at least some of Plaintiff doctors' Title VII claims are time-barred due to their failure to exhaust their administrative remedies. As a general principle, prior to filing a Title VII action, a plaintiff first must file a charge of discrimination with the EEOC. *See Sanchez v. Standard Brands*, 431 F.2d 455, 460 (5th Cir. 1970). Similarly, for federal sector employees, the applicable process requires "a complaining party to pursue administrative relief prior to court action, thereby encouraging more expedient, less formal, and less expensive resolution of disputes within the Federal Government and outside of court." *West v. Gibson*, 527 U.S. 212, 218-19 (1999). Thus, a federal sector complainant must "initiate contact with a counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). If the matter is not thereby resolved, a complaint must be filed with the agency that allegedly discriminated against the complainant. While administrative exhaustion is required, exhaustion is generally not required where the issues raised by plaintiff's complaint are reasonably related to her administrative filings. *Wu v. Thomas,* 863 F.2d 1543, 1547 (11th Cir. 1989). Section 1614.105(a)(2), "provides an exception for complainants who acted in good faith." *Brown v. Snow*, 440 F.3d 1259, 1265 (11th Cir. 2006).[13] The Eleventh Circuit considers "whether the complainant participated in

---

[13] In pertinent part, 29 C.F.R. § 1614.105(a)(2) provides:

(2) The agency or the Commission shall extend the 45-day time limit in paragraph

12

the administrative process in good faith." *Id.* at 1264 (11th Cir. 2006). Thus, this Circuit recognizes that a "plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gregory v. Ga. Dep't of Human Resources*, 355 F.3d 1277, 1280 (11th Cir. 2004) (quoting *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000)). Judicial claims that "amplify, clarify, or more clearly focus" the allegations in an EEOC charge are permitted, however, courts will not permit a plaintiff to allege new acts of discrimination. *Id.* at 1279-80; *see also Wu*, 863 F.2d at 1547 ("[a]llegations of new acts of discrimination offered as the essential basis for the requested judicial review are not appropriate"). "The proper inquiry . . . therefore is whether [the Plaintiff's] complaint was like or related to, or grew out of, the allegations contained in her EEOC charge." *Gregory*, 355 F.3d at 1280.

Concerning Gowski, the undisputed facts indicate that in May 2007 she received a letter from Dr. Lin proposing a fourteen-day suspension on two charges for "disrespectful and unprofessional conduct" that allegedly occurred March 3 and 4, 2007, arising out of exchanges with several nurses. (Doc. 51-30 at 44-45). The letter of suspension from Dr. Hopkins sustaining the charges was dated August 8, 2007. (Doc. 51-33 at 16-17). Gowski

---

(a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

29 C.F.R. § 1614.105(a)(2).

did not discuss the suspension with an EEO counselor.[14] *See* (Doc. 83-20 at 12-13). Defendant urges that Gowski was obligated to first report the suspension to an EEO counselor, and her failure to do so precludes the court's consideration of that claim. Plaintiff, on the other hand, argues that the EEO investigation had been concluded at that point to no avail, and she was at that point pursuing her claims through her federal lawsuit.

By Gowski's argument, the 2007 suspension was part of an ongoing pattern and practice of retaliation directed toward her and others who engaged in EEO activities. Gowski maintains that she was targeted by Lin for such retaliation in response to her August 2005 EEO complaints and that all the subsequent employment actions directed at her were related. In a light most favorable to the Plaintiff doctors, there is support for the claim that their supervisors sought to cut down on EEO activity and one way of doing that was by punishing those who engaged in such activity. In this particular instance, Gowski asserts that the suspension was one of a series of actions directed against her by Van Buskirk, Lin and Patel and that it grew out of the August 2006 reprimand. Gowski's August 2006 reprimand was based on charges regarding alleged (1) disruptive behavior at a hospitalists' staff meeting and a (2) confrontation with a Dr. Shelby Shamas. *See* (Doc. 51-30 at 20-23). The August 2007 suspension was based on charges of alleged disrespectful and unprofessional conduct arising out of confrontations with nurses occurring in March 2007. Although seemingly separate

---

[14]Gowski informally complained in August 2005. Her formal complaint was made in October 2005. She claimed gender and religious discrimination resulting in demotion and work reassignment, false accusations against her, hostile work environment. *See* (Docs. 51-8, 51-9).

events, in each instance, the recommended adverse employment action was initiated by Lin who, along with Van Buskirk and Hopkins, arguably evidenced a discriminatory animus toward the Plaintiff. On the proffered evidence, Gowski was targeted by Lin for her EEO activity and the employment action was unfounded and uncalled for. The proposed suspension letter (Doc. 51-30 at 45) specifically references the August 2006, reprimand for disrespectful behavior noting that this "past record" will be taken into account in determining proper disciplinary action. *See* (Docs. 51-30 at 44-45, 51-33 at 16-17). In a light most favorable to the Plaintiff, the 2007 suspension was not wholly unrelated to the hostile work environment she claimed in her EEO complaint and was just another incident in a series of actions taken against her as part of this retaliatory scheme to get rid of her due to her EEO activity.

The court is mindful that "the purpose of [the] exhaustion [of remedies requirement] is to give the agency the information it needs to investigate and resolve the dispute between the employee and the employer." *Brown*, 440 F.3d at 1263 (quoting *Wade v. Sec'y of the Army*, 796 F.2d 1369, 1377 (11th Cir. 1986)). However, as noted by the Eleventh Circuit in *Gregory,* "[c]ourts are nonetheless extremely reluctant to allow procedural technicalities to bar claims brought under Title VII." 355 F.3d at 1280 (citations omitted). Moreover, it is apparent that Gowski actively participated in the EEO process by raising many of her complaints, including the 2006 reprimand, to the EEO counselor and in her Charge of Discrimination, and amendments thereto. *See* (Docs. 51-8, 51-9). In explanation why she did not contact an EEO counselor regarding the 2007 suspension, Gowski testified, "I didn't talk

to the EEO again. They had already cut me off when I was back on proposed reprimand." (Doc. 83-20 at 13). Given the lack of resolution by the Defendant of any of Gowski's prior discrimination complaints, I conclude it was not unreasonable for Plaintiff to determine that another effort at contacting an EEO counselor appeared to be futile. *See generally Wu*, 83 F.2d at 1547 (questioning whether requiring right to sue letter on the third EEOC charge would serve any purpose given the employer's reaction to plaintiff's previous charges). Accordingly, as to Defendant's argument that Gowski's 2007 suspension is time-barred for failure to exhaust administrative remedies, the motion is **denied**.

Similarly, as to whether Zachariah's failure to communicate her September 2007 suspension to an EEO counselor bars consideration of that incident as a basis for her retaliation claim, the issue is again whether the evidence indicates the suspension grew out of or was related to her prior EEO allegations.[15] *See Gregory*, 355 F.3d at 1280. Here, the undisputed facts indicate that on August 3, 2007, Lin issued a letter to Zachariah regarding her "proposed discharge" which included allegations concerning unapproved research previously raised. (Doc. 63-96 at 1-9). In a letter dated September 13, 2007, the proposed discharge was reduced to a fourteen-day suspension by Hopkins based on his sustaining six of the twelve charges outlined in the prior proposed discharge letter. (Doc. 51-33 at 6-7). The charges

---

[15]Zachariah had a 2003 EEO complaint which resulted in a settlement agreement. It appears she contacted an EEO counselor in February 2006 and made a formal complaint in April 2006. Among her many complaints, were retaliation, race, age and sex discrimination, harassment, loss of leadership positions and privileges, and breach of the prior settlement agreement. That complaint was amended and a lengthy list of charges was accepted for investigation. (Doc. 51-12).

sustained included conduct unbecoming a federal employee; entering inappropriate comments (related to hospital operational issues) in a patient's medical record; disrespectful conduct; failure to follow instructions; failure to adhere to policy related to photographic procedures; and lack of candor in an investigation. *See id.* The suspension was not addressed with an EEO Counselor. When asked at deposition if she discussed the August 3, 2007, proposed discharge letter with an EEO counselor, Zachariah responded, "we decided not to go for the EEO route any more, because we went many times and then we were not getting any response." (Doc. 63-51 at 38). Of note, the initial Complaint in the judicial matter was filed on August 27, 2007. Hopkins' notice of suspension is dated September 13, 2007.[16]

In Zachariah's case, she proffers evidence that her EEO advocacy began in 2003, on a complaint which was settled. By her evidence, the VA breached the settlement agreement and when she complained, her supervisors set out to retaliate against her, ultimately closing the neurology service and later removing her as section chief. She outlines a number of other events which she claims were all intended to punish her for her advocacy and to force her out. Again, as in the case of Gowski, it appears Zachariah was actively participating in good faith in the EEO process since 2003. By my review, the incidents surrounding and leading up to the suspension are arguably further evidence of a retaliatory scheme by the Defendant. Thus, I conclude that Zachariah's 2007 suspension is related to or grows out of her prior complaints of hostile work environment and reprisal and is therefore not time-barred for failure to exhaust

---

[16]The regulations call for the dismissal of a complaint that is the basis of a pending civil action in the district court. 29 C.F.R. § 1614.107(a)(3).

administrative remedies. *See Gregory*, 355 F.3d at 1280. Accordingly, Defendant's motion is appropriately **denied** on this issue.

Defendant also urges that Cote's claim that she was passed over by Van Buskirk for the position of Chief of Medicine Service is not an action about which she can now complain due to her failure to exhaust. Further, her gender-based claim that she was improperly removed as Director of the Medical Intensive Care Unit ("MICU") and replaced by Dr. Marinelli, a male physician, is also time-barred for lack of exhaustion.[17]

Regarding the Chief of Medicine Service position, Defendant maintains that Cote applied for the position twice. The first time, she withdrew her application from consideration when she was not interviewed, and Van Buskirk got the position. When Van Buskirk became chief of staff, she did not reapply because she never saw the position advertised. She never contacted an EEO counselor within 45 days after learning of Lin's selection for that position. Defendant notes that at depositions, Cote stated that while she never complained to a counselor nor made this a part of her EEO complaints, she claimed to have discussed the matter during mediation of her 2004 Charge of retaliation by Van Buskirk. It is undisputed

---

[17]Cote's first EEO complaints were brought in 2002. These complaints appear relevant to this suit only for background purposes. On September 15, 2004, she made complaint against Van Buskirk for reprisal and hostile work environment. The complaint made no mention of the hiring of Lin as the Chief of Medicine Services. The complaint was settled at mediation. In October 2005, she again formally complained that she was denied promotion to the Chief of Pulmonary Services in favor of a male doctor, given poor performance evaluations, subjected to hostility and a lack of support for her work assignments, and research work, and denied recognition for her achievements. The complaint made no mention of the hiring of Drs. Lin or Marinelli. (Doc. 51-3). That complaint was amended on March 1, 2006, to reflect that it was brought on the basis of gender as well as hostile work environment. *See* (Doc. 63-87).

that the mediation resulted in a settlement and her withdrawal of the EEO complaint. Citing *Martin v. Frank*, 788 F. Supp. 821 (D. Del.1992), Defendant urges that Cote cannot now resurrect this claim three years after withdrawing it without having administratively exhausted the claim.

Cote testified at deposition that she never applied for the Chief of Medicine position for which Lin was selected because it was never posted. She claimed that she was waiting for it to be posted but as far as she knew, the job was just given to Lin by Van Buskirk. She urges such was contrary to VA regulations. She never complained to an EEO counselor. *See* (Doc. 63-9 at 10). She now asserts that Van Buskirk misled her by informing her that he had not pre-selected Lin for the position. She claims that this, in part, led to settlement and the withdrawal of the 2004 EEO complaint. She now wishes to pursue the matter as a gender-based claim for discrimination given the evidence from Lainhart that Van Buskirk's assurance that Lin had not been pre-selected was untrue.[18] Citing *Smith v. Potter*, No. 08-10393, 2009 WL 274557 (11th Cir. Feb. 3, 2009), Cote urges that the continuing violation theory applies because she was misled, and equitable tolling is applicable.

Case law dictates that a failure to promote or hire claim such as this is a discrete act of discrimination that triggers the exhaustion requirement. The exhaustion period begins once the employee who alleges the discrimination receives "unequivocal communication of the

---

[18]This information apparently derives from Lainhart's conversations with Lin after she became the Administrative Officer ("AO"). Exactly when those conversations occurred or when Cote learned this information is unclear, but the testimony suggests that Lin was the only person considered for the position.

adverse employment decision." *Id.* at *2 (quoting *Wright v. AmSouth Bancorporation*, 320 F.3d 1198, 1202 (11th Cir. 2003)).  Even if Cote is entitled to a period of equitable tolling from the point when she first raised the issue at mediation and when she learned that she had been misled by Van Buskirk, assuming such occurred, she made no effort to again re-open or raise the settled claim in any administrative process.  Since I have found no case that would wholly excuse a plaintiff from revisiting the EEO administrative process in these circumstances, I conclude that Cote may not claim this hiring decision as a discrete basis for her claims of gender discrimination.  Although not argued, Cote might claim that revisiting the matter before the EEO would have been futile given the cast of characters she was dealing with.  However, even if that were so, she fails to demonstrate any disparate treatment in this hiring decision or that Van Buskirk evidenced a gender-based animus in the decision.  Cote admits that she never made application for the position, and I find no proof that she even made her interest known to Van Buskirk before the decision was made.  While the hiring decision reflects Van Buskirk's favoritism of Lin (and may also reflect a violation of VA policy), the decision reflects no particular gender bias permitting an inference of discrimination.  As far as appears to me, all other interested parties, male or female, were denied the opportunity equally.  Thus, on either basis, Defendant's motion is **granted** as to this claim.

Further, Plaintiff has proffered no evidence that she consulted an EEO counselor regarding her removal and replacement as the Chief of MICU or otherwise made it a basis of her EEO complaint.  Again, "[d]iscrete discriminatory acts are not actionable if time-barred,

even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101,113 (2002). Accordingly, I conclude that these discrete acts are time-barred and the motion is **granted** on this gender discrimination claim as well.[19]

## B.

Plaintiffs claim direct and circumstantial evidence of discrimination. In support of their claims of direct evidence of discrimination, they cite statements attributable to Lin, Van Buskirk and Hopkins. Additionally, they claim evidence that these supervisors practiced a deliberate and intentional *pattern and practice* of retaliation against employees who raised EEO complaints.[20] They seek to employ the pattern and practice proof model approved in actions by the EEOC and in class actions to shift to the Defendant the burden of proving a lack of retaliation. Notably, they seek prospective relief as well as damages on the claims for retaliation and gender discrimination.

I conclude that Plaintiffs may not resort to this theory of proof in the circumstances of this case. "Section 707(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-6(a), entitles

---

[19]In terms of the evidence at trial, I recognize that the charge filing requirement of Title VII does not bar an employee from using prior acts of discrimination for which no charge was timely filed with the EEOC as background evidence in support of a timely Title VII claim. *Nat'l R.R. Passenger Corp.*, 536 U.S. at 113.

[20]Their response asserts a pattern and practice of retaliation particularly against Gowski and Zachariah intended to lead to their dismissal. To a lesser extent, they include Cote and Lainhart under this theory as well. A pattern or practice claim requires the plaintiffs establish that an employer's discriminatory conduct was "standard operating procedure." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977). In other words, plaintiffs must "prove more than the mere occurrence of isolated or accidental or sporadic discriminatory acts." *Id.* They must show that the discrimination was "the regular rather than the unusual practice." *Id.*

the Government to bring a pattern or practice claim on behalf of a class of similarly situated employees for declaratory and injunctive relief against an ongoing act of intentional discrimination in violation of Title VII." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 964-65 (11th Cir. 2008). A "private" pattern or practice claim for such relief may also be brought under Title VII as a class action, pursuant to Federal Rule of Civil Procedure 23(b)(2), by one or more of the similarly situated employees. *See Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 876 n.9 (1984) ("elements of a prima facie pattern-or-practice case are the same in a private class action [as when the government brings the claim]"); *see also EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286-87 (11th Cir. 2000) (a pattern and practice claim either may be brought by the EEOC or by a class of private plaintiffs) (citations omitted). However, the court's reading of these cases, in particular, the *Davis* decision clearly suggests that in this circuit, Plaintiffs may not assert an individual claim for a pattern and practice of discrimination. While they need not abandon proof of such pattern and practice, if it exists, as such may support their claims of direct and circumstantial evidence of discrimination, however, the pattern and practice proof model is not available in this type case.

## C.

As for the Plaintiff doctors' claims of retaliation, both as to their allegations that Defendant engaged in a pattern of discrete acts of retaliation against them and under the

theory of a retaliatory hostile workplace,[21] I conclude that the proffered exhibits and testimony give rise to questions of fact that cannot be resolved on this motion. In a light most favorable to Plaintiff doctors, they present a mix of direct and circumstantial evidence that their supervisory officials took significant adverse actions against them intended as a punishment because of their EEO advocacy.[22] Defendant, acknowledging that the statements by Lainhart arguably permit the claims to be considered under the direct evidence analysis, proffers argument and evidence that the same decision would have been made even absent the discriminatory motive. On my review, the disputes inherent in the facts cannot be resolved on summary judgment. As for the claim that such conduct created a retaliation-based hostile work environment, the Defendant argued that such actions as did occur were not severe or

---

[21]It now appears that the Second, Seventh, Ninth and Tenth Circuits "have held that an employer may be liable for a retaliation-based hostile work environment." *Ray v. Henderson,* 217 F.3d 1234, 1245 (9th Cir. 2000). By this theory, a co-worker's retaliatory harassment, if sufficiently severe, may constitute an adverse employment action for purposes of a retaliation claim. Apart from the fact that such has not expressly been recognized by the Eleventh Circuit, I see no bar to this theory being argued in this case.

[22] In *Burlington Northern & Santa Fe Railway Company v. White,* 548 U.S. 53 (2006), the Court stated, "[t]he anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm. . . . [A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 67-68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006). In *Crawford v. Carroll*, 529 F.3d 961 (11th Cir. 2008), the Eleventh Circuit stated "[*Burlington's*] more liberal view of what constitutes an adverse employment action accords an employee protection from a wider range of retaliatory conduct . . ." *Id.* at 974. While the Secretary's assertion that not all the actions complained of are material even under this standard may be correct, the retaliation claims of these doctors are best left to the jury to sort out.

pervasive enough as a matter of law to support such a claim assuming such a claim exists.[23]

However, upon my consideration, this claim may not be resolved on summary judgment given

the divergent proof offered by the parties.

## D.

As for the claims of gender discrimination by the Plaintiff doctors, the issues have

been narrowed considerably from the allegations of their Amended Complaint. Specifically,

at oral argument, Plaintiffs characterized their gender discrimination claims as "limited."

Although broadly asserting that there is a gender bias as it relates to leadership positions by

the Bay Pines' administration, Plaintiffs explicitly identify just three leadership positions for

which Cote was passed over in favor of male candidates[24] and two leadership positions which

Zachariah lost to male employees. Gowski makes no claim for gender discrimination. In

response, the defense urges that there is no record evidence of gender bias, and in fact, many

---

[23]Harassment is severe or pervasive for Title VII purposes only if it is both subjectively and objectively severe and pervasive. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999). Harassment is subjectively severe and pervasive if the plaintiff perceived it to be so at the time, and is objectively severe and pervasive if a reasonable person in the plaintiff's position would find the environment hostile or abusive. *Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1247-48 (11th Cir. 2004); *Mendoza*, 195 F.3d at 1246. When determining the objective component, courts look to the frequency and severity of the conduct; whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and whether the conduct unreasonably interferes with the plaintiff's job performance. *Hulsey*, 367 F.3d at 1247-48; *Mendoza*, 195 F.3d at 1246. A totality of the circumstances approach is employed when considering these factors; proof of each factor individually is not required. *Hulsey*, 367 F.3d at 1248 (citing *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002)).

[24]As determined above, Cote is time-barred from raising two of the three employment actions due to her failure to exhaust.

women have been hired at Bay Pines since 2004, with at least two women being appointed to Service Chief positions.

The remaining employment action about which Cote complains on the basis of gender discrimination concerns the selection of Dr. Anderson, a male physician, as the Chief of Pulmonary Medicine. This employment action was clearly a subject raised by her 2005 EEOC Charge. Upon my consideration, Cote presents a *prima facie* case of gender discrimination on this claim. Pursuant to the *McDonnell Douglas* framework, the burden of production then shifts to the Defendant employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. Here, Defendant asserts that the appointment of Anderson was at the behest of the Attorney General in conjunction with the settlement of Anderson's age discrimination suit against the VA. *See* (Docs. 63-3, 63-44). Plaintiff argues that Defendant's reason is pretextual, citing statements made by a former Assistant United States Attorney who advised that the U.S. Attorney's Office did not order that Anderson be made the Chief of the Pulmonary Section, and further that he did not know anyone else was interested in the position. *See* (Doc. 63-53). Based on this proffer by Plaintiff, I conclude that a question of fact exists as to Cote's claim that she was discriminated against on the basis of gender due to the appointment of Anderson instead of her to the position as Chief of Pulmonary Medicine, and thus Defendant's motion is **denied** on this basis.

Regarding Zachariah's gender discrimination claims, she complains of her removal as the Chief of Neurology Services when neurology was made a "section" under Medicine Services and her subsequent removal as section chief. Suffice it to say that the parties take

very divergent views of the evidence surrounding the VA's decision to merge the Neurology Service into the Medicine Services. By Plaintiff's account, this was done in violation of the settlement of her earlier EEO complaint and in order to place her under Lin's supervision so that they might achieve the larger goal of forcing her out of the VA.[25] By Van Buskirk and Lin's account, the change was necessary and appropriate in the given circumstances. In any event, it is clear that in May 2006, Van Buskirk announced that Neurology was being merged into the Medicine Services. As a consequence, Zachariah lost her position as the chief of that service and she became the section chief under the supervision of Dr. Lin. Thereafter, Lin determined to rotate the section chief position among the other neurologists and Zachariah lost that position to Dr. Reddy, a male. Zachariah asserts this realignment was a significant "downgrade" and is evidence of both gender discrimination and Van Buskirk's and Lin's continued retaliation intended to get her to leave the VA. Defendant offers a significantly different picture of these actions which it claims were necessary and appropriate to the extant circumstances and done wholly without discriminatory animus.

Insofar as Zachariah claims that the merger of Neurology into Medicine Services is, standing alone, a discrete act of gender discrimination, I conclude that the claim fails. Under the *McDonnell Douglas* analysis, Plaintiff makes no showing that she was subjected to an adverse employment action in contrast to similarly situated employees outside the protected class. There is no showing from Lainhart that this action was enforced by Van Buskirk and

---

[25]Plaintiff claims that Ms. Lainhart provides direct evidence that Van Buskirk and Lin plotted to retaliate against her for her EEO activity by merging Neurology into Medicine Services so that she would be under Lin's supervision.

Lin because of Zachariah's gender, and as far as the evidence indicates, this organizational change affected every person in Neurology regardless of their gender. While the evidence permits Zachariah to argue that this was a discrete act of retaliation for her EEO activities, I conclude that it will not separately support a gender discrimination claim. On the other hand, insofar as she couples this action with her subsequent loss of the position of section chief, she does establish a *prima facie* case of gender discrimination. In explanation of these actions, Defendant submits that the organizational change was intended to assure more efficient and better use of the facilities and doctors and that once neurology was merged into Medicine Service, it was decided that the chief's position would be rotated among the neurology doctors, with Dr. Reddy being first and then Dr. Huda next in line. By Lin's explanation, he was not planning on including Zachariah in the rotation because she had just completed her tenure as chief and he "wanted to give each neurologist a chance to be Chief for a few months to see how they perform." (Doc. 51-31 at 9). After Reddy was Chief for several months, Lin approached Huda about taking over the chief position and Reddy stepping down. Neither doctor had a strong opinion about it and deferred to Lin who kept Reddy as the Acting Section Chief. *Id.* In the face of the nondiscriminatory explanation, Zachariah asserts that the "rotation" explanation is pretextual, and that the real reason was the Defendant's ongoing retaliation against her and the desire to force her out. While the evidence of pretext is relatively weak insofar as it relates to gender discrimination, I think it better to let the jury filter through this series of events and decide the disputed evidence of facts on this claim. Accordingly, Defendant's motion is **denied** on this claim.

27

E.

As to Gowski's disparate treatment claim for religious discrimination, Plaintiff argues that such is supported by direct evidence from several statements by Lin or others regarding her "pro-life" agenda as well as circumstantial evidence of discrimination.[26]  Defendant initially argues that none of the offending comments were made by any of her supervisors and in any event, Plaintiff is unable to establish a prima facie case of religious discrimination because she can identify no comparable employees who were treated more favorably than Gowski was.[27]  At arguments, Defendant further suggested that Gowski cannot establish that her removal from the ICU or as chair of a Critical Care Committee was an adverse employment action.

Assuming without finally deciding on this motion that Gowski's removal from MICU and as chair of the Critical Care Committee were adverse employment actions, reflecting a reduction in responsibilities and prestige, I find both direct and circumstantial evidence of religious discrimination in these actions sufficient to withstand this motion.  The proffered

---

[26]In legal support, Plaintiff cites the Eighth Circuit's opinion in *Wilson v. U.S. West Communications*, 58 F.3d 1337 (8th Cir. 1995), for the proposition that display of a pro-life button involved a bona fide religious belief.  Title VII defines religion to include "beliefs." *See* 42 U.S.C. § 2000e(j).

[27]In order to establish a claim for religious discrimination, a plaintiff must prove (1) she had a bona fide religious belief that conflicted with her employment duties; (2) that she informed her employer of such belief; and (3) plaintiff was discharged, threatened, or subject to discriminatory treatment because of such beliefs.  *Beadle v. Hillsborough County Sheriff's Dep't*, 29 F.3d 589, 592 n.5 (11th Cir. 1994) (citing *Brener v. Diagnostic Center Hosp.*, 671 F.2d 141, 144 (5th Cir. 1982).

statements attributable to Lin and Frutchey offer direct evidence of religious discrimination in connection with her removal from MICU. These same actors were responsible for seeing that Gowski was thereafter removed from the chair of the Critical Care Committee. This and other circumstantial evidence supports these claim as well. While Defendant proffers nondiscriminatory explanations for why these actions were taken, Plaintiff proffers sufficient evidence to call into question the veracity of the proffered reasons. Accordingly, Defendant's motion is **denied** as to Gowski's claim of religious discrimination.

F.

On Lainhart's claims, she joins the Plaintiff doctors in alleging discrimination on the basis of her gender and retaliation, in her case, for *opposing* the anti-EEO activities of her supervisor, Lin, and Van Buskirk. Her allegations suggest that between January and mid-April 2007, Lin, with the approval of Van Buskirk, subjected her to a hostile work environment. She also alleges a Fair Labor Standards Act ("FLSA") claim, for the failure of the VA to pay her overtime. By Defendant's motion, Lainhart has no disparate treatment claim on the basis of gender as she suffered no materially adverse employment action on that basis and insofar as her claims are for hostile work environment, she fails to establish the requisite severe and pervasive conduct necessary to support such claims. On the FLSA claim, Defendant argues that since Lainhart did not request in advance nor receive approval for overtime work, she is not entitled to overtime pay.

In response, Lainhart simply states that the acts of retaliation set forth in Plaintiffs' Statement of Facts (Doc. 61) collectively contributed to a hostile work environment and

individually amounted to discrete acts of retaliation.  She urges that certain of Lin's comments regarding the beauty of a co-worker and his stereotypical attitude toward women reveal a gender-based hostile work environment as well.  As for the FLSA claim, she urges that the person who requested her to perform the overtime work (Lin) was the same individual from whom she would have been asking for permission for the additional time and compensation.  At times he would allow "comp time" but at other times, he ordered her not to put in for it.  Moreover, she asserts that she did ask Lin's approval on multiple occasions, but same was denied.  She claims she is owed $8,153.14.[28]

Under Title VII, a hostile work environment claim is established upon proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Miller,* 277 F.3d at 1275 (11th Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  A plaintiff establishes a hostile work environment claim by showing that (1) she belongs to a protected group; (2) she has been subject to unwelcome harassment; (3) the harassment was based upon on a protected characteristic of the employee; (4) the harassment was sufficiently severe or pervasive to alter

---

[28]Initially, I agree with the Defendant that Lainhart fails to demonstrate materially adverse personnel action against her to support a claim for gender-based disparate treatment.  As discussed below, in a light most favorable to her, she was subjected to rude, mean-spirited and boorish behavior and comments by Lin, arguably based on her and other's EEO activity, but she identifies no particular material adverse consequence to the terms and conditions of her employment.  On her FLSA claim, I find that the factual disputes arising from the contrary statements by Lin prevent its resolution on this motion.  Accordingly, the motion is **denied** as to this claim.

the terms and conditions of employment and create a discriminatorily abusive work environment; and (5) the employer is responsible for such environment under either a theory of vicarious or direct liability. *Id.*

In the usual course, actionable sexual harassment "involves patterns or allegations of extensive, long-lasting, unaddressed, and uninhibited sexual threats or conduct that permeated the . . . work environment." *Gupta*, 212 F.3d at 586 (quoting *Indest v. Freeman Decorating, Inc.,* 164 F.3d 258, 264 (5th Cir. 1999) (citations omitted)). Consequently, "simple teasing, offhand comments, and isolated incidents unless extremely serious will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (explaining that complaints objecting to the ordinary tribulations of the workplace including the sporadic use of abusive language, gender-related jokes, and occasional teasing are not actionable). A plaintiff must prove that her gender was the underlying reason for the alleged harassment she suffered. *Succar v. Dade County Sch. Bd.*, 229 F.3d 1343, 1345 (11th Cir. 2000) (holding that the "harassment of [plaintiff] was motivated not by his male gender, but rather by [the harasser's] contempt for [plaintiff] following their failed relationship; [Plaintiff's] gender was merely coincidental"). Thus, "statements and conduct in support of gender-based hostile work environment claim must be of a sexual or gender-related nature-'sexual advances, requests for sexual favors [or] conduct of a sexual nature' . . . before they are considered in determining whether the severe or pervasive requirement is met. Innocuous statements or conduct, or boorish ones that do not relate to the sex of the actor or of the offended party are not counted." *Gupta*, 212 F.3d at 583

(quoting *Mendoza,* 195 F.3d at 1245). *See also Minor v. Ivy Tech State Coll.*, 174 F.3d 855, 858 (7th Cir. 1999) ("It is not enough that a supervisor or coworker fails to treat a female employee with sensitivity, tact, and delicacy, uses coarse language, or is a boor. Such failures are too commonplace in today's America, regardless of the sex of the employee, to be classified as discriminatory.").

Lainhart urges that Lin's repeated comments to her and to others about her created a hostile work environment. Specifically, Lainhart complained that Lin said she was an obstructionist; that she worked against physicians; that she was passive-aggressive; that she had an anxiety disorder; that she was a bad employee who was defensive and insecure; and that he was going to push Lainhart out. (Doc. 63-29 at 28). Additionally, Lainhart testified that Lin said she was the worst AO and that she was not performing; that she was not smart, that he "blacklisted" her to the front office; and that he spoke condescendingly to her. (Doc. 63-29 at 33-38). By my consideration, such comments, even if true and accurate, do not adequately demonstrate the type of gender-based animus contemplated by the decisions in this circuit. However, Lainhart also testifies as to a number of comments made to her by Lin that she was not pretty and that her co-worker, Mitra, had beauty that she did not. *Id.* at 29, 35. Lin purportedly also commented to others about how cute and beautiful Mitra was, how Lainhart did not possess that beauty, and how Mitra, because of her beauty, would be a better administrator than Lainhart. *Id.* at 41. When Lainhart complained to Lin that Mitra received favored treatment regarding the attendance practices and in her dress code, Lin accused Lainhart of being jealous of Mitra. *Id.* at 42. When asked whether Lin made derogatory

comments about her gender, Lainhart replied that he said he would not work for a female in any capacity as director; that he did not think women should be directors. *Id.* at 48. She also testified that she never heard any female doctors complain about Lin making gender comments about them and that Lin was condescending, both to males and females. *Id.* at 48-49.

Establishing that sexually harassing conduct was sufficiently severe or pervasive to alter an employee's terms or conditions of employment includes a subjective and an objective component, such that the employee must "subjectively perceive" the harassment as sufficiently severe and pervasive, and this subjective perception must be objectively reasonable. *Mendoza,* 195 F.3d at 124. Objective severity of sexual harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances. *Id.* The Eleventh Circuit explained that "[i]f the complained of statements and conduct are of a gender-related or sexual nature, there are four factors that [courts] consider in determining whether they are sufficiently severe and pervasive from an objective standpoint to alter an employee's terms or conditions of employment: '(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance.'" *Gupta*, 212 F.3d at 584 (quoting *Mendoza*, 195 F.3d at 1246). Conduct is objectively severe when the workplace is permeated with intimidation, ridicule and insult. *Id.* at 1276-77.

By Lainhart's account, she began working as the acting Administrative Officer in March 2005 and she became the AO in January 2006. She left that position for one in the business office in March 2007. She sweeps broadly with her allegations of offensive comments or actions by Lin. Most do not reflect a gender animus. By her complaint, they occurred over an approximate four month period in 2007. Upon my consideration, while the comments, if true, were mean-spirited, rude and boorish, there were too few reflecting anything related to gender and, on the whole, those lacked the severe humiliating and degrading character called for to support such a claim. There were no physical threats or touching. While the comments may suggest that Lin had "turned" on Lainhart as she claims and that such comments were directed at her in retaliation for her support of those asserting EEO grievances, on the whole the comments and actions are insufficient to support the gender claim. Plaintiff really makes little showing that she subjectively believed the comments and actions bore a gender animus, nor does she show that the comments interfered in any significant way with her performance of the job. Even if she believed the comments were gender-based, from an objective standpoint, they were insufficient to support the gender claim. The decisions in *Gupta* and *Mendoza* provide some perspective for the objective analysis as well. In *Gupta*, the court did not find the alleged harasser's repeated references to Gupta looking beautiful as constituting discriminatory conditions of her employment. Here, the issue is whether Lin's repeated comments about Lainhart being "not pretty" while juxtaposed with his comments about how beautiful or attractive a co-worker was supports her claim that the hostility was objectively severe and gender-based. By my review of the totality

34

of the proffered evidence, it does not. The comments by Lin about Mitra's beauty or Plaintiff's lack thereof, the comments that he would not work for a female in the capacity as a director, that he did not think that women should be directors, even if all true, absent more objective and severe evidence of gender-based hostility, does not alter my conclusion.[29] Lainhart's subjective opinion that Lin had stereotypical attitudes toward women does not change the conclusion either. Because she fails to establish that the allegedly sexually harassing conduct was sufficiently severe or pervasive to alter the terms or conditions of employment, I conclude that Lainhart's claim for gender-based hostile work environment fails as a matter of law and the motion should be **granted** as to that claim. [30]

---

[29]In *Mendoza,* the court reviewed numerous gender-based hostile work environment cases before deciding that the offensive conduct in that case was not sufficiently severe or pervasive to support the claim for gender-based hostile work environment. Even before reaching its conclusion, the court questioned whether the offensive conduct at issue included "the necessary sexual or other gender-related connotations to be actionable sex discrimination. . ." *Mendoza,* 195 F.3d at 1247-48. The same might be argued here, although I find in a light most favorable to Plaintiff at least some of the comments have gender connotations. But the court in *Mendoza* also cited with approval the case of *Brill v. Lante Corp.,* 119 F.3d 1266 (7th Cir. 1997), particularly "for rejecting the plaintiff's attempt to buttress a hostile-environment claim with evidence of unpleasant, but non-sexual, conduct." That rationale applies here as well.

[30]At oral argument, counsel for Plaintiffs vaguely urged that Lainhart's claim is more appropriately described as a "gender-plus" case. A more subtle form of discrimination, "sex-plus" cases involve the "classification of employees on the basis of sex plus one other ostensibly neutral characteristic." *Willingham v. Macon Tel. Pub. Co.*, 507 F.2d 1084, 1089 (5th Cir. 1975). The Supreme Court in *Phillips v. Martin Marietta Corp.*, 400 U.S. 542, 544 (1971) expressly found that "sex-plus" discrimination violates the Civil Rights Act where the defendant employer refused to accept job applications from women with pre-school aged children. To be actionable, "gender-plus" must be premised on *gender*. . . . Thus, although the protected class need not include *all* women, the plaintiff must still prove that the subclass of women was unfavorably treated as compared to the corresponding subclass of men." *Coleman v. B-G Maintenance Mgmt. of Col., Inc.*, 108 F.3d 1199, 1203 (10th Cir. 1997)

As for Lainhart's claim that she too suffered a retaliation based hostile work environment because of her efforts to oppose what she claims Lin and Van Buskirk and others were doing to those who had brought EEO claims against the VA, I find it appropriate to allow the matter to proceed to trial along with the other Plaintiffs' retaliation claims. As to that aspect of her claim, the motion is **denied.**

IV.

Based on the foregoing, Defendant's Motion for Summary Judgment or Partial Summary Judgment and Memorandum in Support (Doc. 51) is **GRANTED** as set forth herein. The case will proceed to trial on the Plaintiffs' claims of retaliation, Gowski's claim for religious discrimination, and Cote's and Zachariah's remaining gender-based disparate treatment claims.

**Done and Ordered** at Tampa, Florida, this 2nd day of June 2009.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record

---

(emphasis in original). Accordingly, "gender-plus plaintiffs can never be successful if there is no corresponding subclass of members of the opposite gender [because] [s]uch plaintiffs cannot make the requisite showing that they were treated differently from similarly situated members of the opposite gender." *Id.* at 1204. Such showing is not made here. This late argument does not dissuade me from concluding that Lainhart's claim for gender-based hostile work environment fails as a matter of law.