**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CLAUDIA G. COTE, M.D.,
et al.,

      Plaintiffs,

      v.                         Case No. 8:07-cv-01524-T-TBM

ERIC K. SHINSEKI, Secretary,
DEPARTMENT OF VETERANS
AFFAIRS,

      Defendant.
_____/

**MOTION FOR REMITTITUR OR, IN THE ALTERNATIVE AT PLAINTIFF'S**
**ELECTION, NEW TRIAL ON COMPENSATORY DAMAGES**

      Defendant, Eric K. Shinseki, Secretary of the Department of Veterans Affairs, pursuant to Rule 59(a), Fed. R. Civ. P., requests that this Court enter an order remitting the amounts of Plaintiffs' compensatory damages.  Should the Court grant defendant's motion for remittitur, defendant requests that the Court require plaintiffs to choose between accepting the reduced amounts or submit to a new trial on the issue of damages.

**I.**    <u>**INTRODUCTION**</u>

      This case was brought by Drs. Claudia Cote, Sally Zachariah, and Diane Gowski, and by Ms. Roxanne Lainhart, an Administrative Officer.  All four plaintiffs raised claims of discrete acts of retaliation and a retaliatory hostile work environment based upon their prior EEO activities.  In addition, Drs. Cote and Zacharia raised claims of gender discrimination, and Dr. Gowski raised a claim of religious discrimination.

After the parties had presented their cases at trial, the jury was provided with a 20-page interrogatory verdict form.  The jury found that Bay Pines had: (1) committed discrete acts of retaliation against all four plaintiffs; and (2) subjected the plaintiffs to a retaliatory hostile work environment.  However, the jury found a complete defense against the retaliation claims with respect to Drs. Gowski and Zacharia because it determined that Bay Pines would have made the same decisions regardless of any retaliatory intent with respect to, or bias against, those doctors.

The jury was also asked to assess damages.  Even though all four plaintiffs remain employed at Bay Pines, and despite the fact that Ms. Lainhart has even been promoted, the jury awarded Dr. Cote $2,000,000, Dr. Zacharia $1,000,000, Dr. Gowski $250,000 and Ms. Lainhart $300,000 in compensatory, non-economic damages. Moreover, the jury awarded Drs. Cote, Zacharia and Gowski lost wages in the amounts of $80,000, $90,000 and $16,000, respectively.  In so doing, the jury strayed far beyond the issue of retaliation and showed that it issued the awards for punitive purposes.  The result was an award of damages wholly unrelated to the evidence pertaining to the issues the jury was asked to decide.  This is particularly relevant with respect to the award of damages for Dr. Zacharia, who did not articulate any bases for non-economic damages during her testimony at trial, but it is also relevant to the other three plaintiffs.

## II.    ARGUMENT

### A.    Standards for Granting a Remittitur

The grounds for granting a new trial or ordering a remittitur are set out in Rule 59(a):

> A new trial may be granted to all or any of the parties on all
> or part of the issues . . . in an action in which there has been
> a trial by jury, for any of the reasons for which new trials
> have heretofore been granted in actions at law in courts of
> the United States.

Fed. R. Civ. P. 59(a).  In interpreting this rule, courts in the Eleventh Circuit "have recognized that a new trial may be warranted by: (1) prejudicial error of law; (2) a verdict against the weight of the evidence; or (3) an excessive or inadequate jury award."  Copley v. Bax Global, 97 F. Supp. 2d 1164, 1169 (S.D. Fla. 2000).

A remittitur is "'the appropriate remedy where the jury's damage award exceeds the amount established by the evidence.'"  Moses v. K-Mart Corp., 905 F. Supp. 1054, 1057 (S.D. Fla., 1995) (quoting Goldstein v. Manhattan Industries, Inc., 758 F.2d 1435, 1448 (11th Cir. 1985)).  In this regard, a compensatory damages award must be supported by the evidentiary record, and a "judge is justified in acting when the jury's verdict falls outside the realm of reason."  Redd v. City of Phenix City, 934 F.2d 1211, 1215 n.3 (11th Cir. 1991); Warren v. Ford Motor Credit Co., 693 F.2d 1373, 1380 (11th Cir. 1982) ("We must grant a new trial or remittitur when the award 'exceeds the maximum limit of a reasonable range within which the jury may properly operate.'").  Similarly, a remittitur is warranted where the jury abandoned analysis for sympathy.  See Evans v. Port Authority of New York and New Jersey, 273 F.3d 346, 352 (3d Cir. 2001).

While the testimony of a plaintiff may support compensatory damages for emotional distress,

> the testimony must establish that the plaintiff suffered demonstrable
> emotional distress, which must be sufficiently articulated; neither
> conclusory statements that the plaintiff suffered emotional distress nor the

3

> mere fact that a constitutional violation occurred supports an award for compensatory damages.  In marshaling the evidence necessary to establish emotional distress resulting from a constitutional violation, Carey instructs us that 'genuine injury' is necessary.

Akouri v. State of Florida Dept. of Transp., 408 F.3d 1338, 1345 (11th Cir. 2005) (citations omitted); see also Matthew v. Hi*Tech Electronic Displays, Inc., 2005 WL 5950966, *1, *10 (M.D. Fla. Oct. 17, 2005) ("In Akouri, 408 F.3d at 1345, the Court found no error in the district court's reversal of a compensatory damages award where the plaintiff presented no evidence of any kind of harm, 'mental, emotional, or otherwise, arising from the discrimination.'").

In assessing an award of compensatory damages for emotional distress in an employment discrimination case, courts look to: 1) the size of the award; 2) the rational relationship between the award and the trial evidence; and 3) awards in similar cases. See Copley, 97 F. Supp. 2d at 1172.  The decision whether to grant a new trial or remittitur on the grounds of excessive damages is a matter within the discretion of the trial court.  See Simon v. Shearson Lehman Bros., Inc., 895 F.2d 1304, 1310 (11th Cir. 1990).

**B.    Comparable Cases Demonstrate That Even $300,000 is Excessive Given the Circumstances of this Case**

42 U.S.C. § 1981a governs the award of damages involving intentional discrimination in employment, including a retaliation claim brought pursuant to Title VII. 42 U.S.C. § 1981a(B)(3) provides, in pertinent part, the following damage limitation:

> The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-

pecuniary losses, and the amount of punitive damages[1] awarded under this section shall not exceed, *for each complaining party*

. . .

(D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000.

42 U.S.C. § 1981a(b)(3)(D).  This statute, by its express terms, limits plaintiffs' compensatory, non-equitable recovery in this case to a maximum of $300,000 per claimant and does not authorize the recovery of $300,000 per claim.  Federal courts have consistently taken this position, and this construction of  § 1981a(b)(3) is well settled.  See Fogg v. Ashcroft, 254 F.3d 103, 108-10 (D.C. Cir. 2001); EEOC v. Dinuba Medical Clinic, 222 F.3d 580, 588 (9th Cir. 2000); Smith v. Chicago School Reform Bd. Of Trustees, 165 F.3d 1142, 1149-50 (7th Cir. 1999); Hudson v. Reno, 130 F. 3d 1193, 1199-1201 (6th Cir. 1997), cert. denied, 525 U.S. 822 (1998), abrogated on other grounds, Pollard v. E.I. duPont de Nemours & Co., 532 U.S. 843 (2001); see also Ledbetter v. Goodyear Tire & Rubber Co., 421 F.3d 1169, 1176 (11th Cir. 2005); Alexander v Fulton County, GA, 207 F.3d 1303, 1322 n.13 (11th Cir. 2000).

Based upon those authorities, the maximum non-equitable recovery that a plaintiff is permitted is $300,000, and, as such, the compensatory damages award for Cote and Zachariah must be reduced to that amount.  Nevertheless, in this case, plaintiffs' damages should be remitted even further as explained below.

---

[1]Plaintiff is not entitled to punitive damages or pre-judgment interest against the United States.

A comparison of other cases where the courts have reduced damages well below the maximum cap of $300,000 is insightful.  For instance, in Bernstein v. Sephora, 182 F. Supp. 2d 1214 (S.D. Fla. 2002), plaintiff alleged race and religious discrimination, sex harassment and retaliation in connection with her non-selection for a promotion.  As narrowed by summary judgment, only the race and retaliation claims went to the jury  The trial evidence revealed that the selecting official harbored an anti-Jewish sentiment, and, in that regard, made derogatory comments about plaintiff's Jewish faith.  See id. at 1218.  The jury awarded $130,500 for emotional pain and mental anguish, which the court reduced to $75,000.

As the court stated regarding the evidence of emotional distress,

> [Plaintiff] testified that she felt "sick," "angry," "furious," and "upset" upon learning that she had not earned the promotion due to . . . anti-Semitism. . . . She also testified that she was anxious, had trouble sleeping and waking, lost her appetite, could not 'find peace' within herself, and was no longer her usual easy-going self. . . .  With respect to medical ailments, [plaintiff] testified that she experienced TMJ pain, that she began suffering from gastrointestinal problems while working at her subsequent job . . . , and that she was taking medication for her nerves and stomach.

Id. at 1228.  Considering the totality of the evidence, however, including plaintiff's testimony, her voluntary separation from the employer and her subsequent employment with higher pay, the court found that a remittitur was appropriate.

In David v. Caterpillar, Inc., 185 F. Supp. 2d 918 (C.D. Ill. 2002), a case involving a non-promotion based upon gender, the jury awarded $100,000 in compensatory damages.  After losing the promotion, plaintiff testified that she felt robbed and cheated, she had difficulty sleeping, cried and had stomach aches.  She also felt that her career

6

had reached a dead end, and she used her savings to complete a business degree to reposition her career.  The court reduced the award to $50,000.  As the court observed,

> [plaintiff] was never unemployed, and although she had to use some of her savings to support her during her educational leave, Caterpillar paid for her educational expenses, and there is no evidence indicating that she suffered the kind of serious financial problems discussed in the case law. There is no evidence that she sought counseling or was treated for emotional harm or that her depression and other symptoms continued for any sustained period of time.

Id. at 924.

In Rainone v. Potter, 388 F. Supp. 2d 120 (E.D. N.Y 2005), plaintiff alleged he was not selected for a promotion due to his gender and in retaliation for prior protected activity.  Finding for plaintiff only on the retaliation claim, the jury awarded $175,000 in emotional distress damages.  In canvassing compensatory damage awards, the court observed that awards over $100,000, which the court noted fell at the "high end of the spectrum," were typically given in cases where there was "evidence of debilitating and permanent alterations in lifestyle."  Id. at 124.  Given the nature of the claim in that case, plaintiff's testimony and the nature of the emotional distress, the court found that a $175,000 award shocked the conscience of the court and needed to be reduced. See id. at 124-126. Thus, the court reduced that award to $50,000.

Similarly, in Copley v. Bax Global, 97 F. Supp. 2d 1164 (S.D. Fla. 2000), the court granted a remittitur from $500,000 to $100,000 in a national origin discrimination case where plaintiff had been suddenly terminated from a long held job.  After considering the evidence, the court concluded that while plaintiff no doubt suffered severe emotional distress as a result of the termination, the evidence did not reflect the type of extraordinary psychological injury to justify an award of nearly $500,000.  As the

7

court noted, "[t]he mental pain and suffering incurred by [p]laintiff was consistent with that which most individuals, with typical financial and family obligations, would feel if suddenly terminated, under ominous circumstances, from a job they had held for years." Id. at 1172.  As the court further stated, plaintiff's lost wages were only $20,000, and he landed a higher paying job within 2 months of his termination.  See id.

Echoing the observation in Rainone v. Potter regarding a spectrum of compensatory damage awards, the court in Copley stated "[i]t is very rare, however, for any award of non-economic compensatory damages above [$150,000] to stand. Thus, $150,000.00 may be viewed as a benchmark figure, above which awards of compensatory damages for mental anguish become suspect." Id. at 1172 (citations omitted).  By and large, awards over $100,000 are upheld in factual situations where the employer's conduct was egregious, where a plaintiff was terminated for discriminatory reasons, or where plaintiff sustained debilitating emotional or financial hardship.  See Muñoz v. Oceanside Resorts, Inc., 223 F.3d 1340, 1344 (11th Cir. 2000) (awarding $150,000 for emotional distress in an age discrimination case due to termination after 27 years of employment); Harding v. Cianbro Corp., 2007 WL 1290910 (D. Me., May 2, 2007) (providing compensatory damages of $137,000 in a disability discrimination case where plaintiff was terminated and testified about the emotional impact of having to start life over at a much reduced salary); Martin v. Mecklenburg County, 2005 WL 2764755 (4th Cir., Oct. 26, 2005)(upholding remittitur by trial court from $300,000 to $100,000 in retaliation case where plaintiff was terminated after three decades of employment).

**C.    The Jury Awards for Plaintiffs' Claimed Emotional Distress is**
**<u>Excessive and not Supported by the Evidence</u>**

Even if reduced to the statutory cap of $300,000, plaintiffs have not produced

sufficient evidence in support of an award of emotional distress damages.  There is no

evidence showing that plaintiffs missed any work due to their allegations of retaliation,

or that they even considered leaving employment at Bay Pines due to perceptions of a

hostile workplace.  In this regard, in <u>Bernstein</u>, the Southern District of Florida found

that remittitur was appropriate where plaintiff voluntarily left her employment.  <u>See</u> 182

F. Supp. 2d 1218.  Here, plaintiffs have voluntarily chosen to remain employed by Bay

Pines, have received increases in salary, and, in Ms. Lainhart's case, has even been

promoted.  Also, plaintiffs have not produced any tangible evidence that they have felt a

debilitating and permanent alteration to their life style.

**1.    Even a Reduced Award of $300,000 for Dr. Zachariah for**
**Emotional Distress is Excessive and not Supported by the**
**<u>Evidentiary Record</u>**

Dr. Zachariah did not articulate any grounds for emotional distress damages.

Rather, she began testifying about medical issues allegedly experienced by some of

her patients.  <u>See</u> Transcript of Dr. Zacharia's Testimony (Vol. Five) ("Dr. Zachariah's

Testimony") 146:14-147:7.[2]  The Court therefore instructed Dr. Zachariah to explain

how the alleged retaliations had affected her emotionally:

Q:          Tell us about your feeling about the retaliation?

---

[2]  Defendant will separately file the transcript excerpts referenced herein for
plaintiff Zachariah.  Furthermore, after defendant receives the transcripts for the
remaining plaintiffs, defendant will likely file a supplemental brief.

9

| | |
|---|---|
| A: | It was horrible, but then you know, I believe in God, I read the Bible to get strength.  That's the only thing, it's my duty to serve this country – these veterans who suffered.  And when a child comes, 21 year old without ice with half of the hand – |
| The Court: | Doctor, this is about how – I appreciate what you are saying here, we all do, but this is – the question is about how you have suffered, ma'am. |
| A: | I suffer when I see them. |
| The Court: | Okay. |
| Q: | But – |
| The Court: | The question is, how has the retaliation affected you? |
| A: | Retaliation is in different forms, what they are doing.  They're different to me all in the stroke field.  What am I; I am a carpet.  And they send letters to the – all the research agencies saying that I did some, you know, I did research without approval. . . . |

Id. at 147:11-148:7.

The transcript makes it clear that, even after the Court's express instructions, Dr. Zachariah still failed to tell the jury how any alleged retaliation had affected her emotionally.  For example, she questioned how much money Bay Pines saved by cancelling a memory disorder clinic and discussed other irrelevant topics.  See id. at 148:21-149:9.  Accordingly, the Court said: "Counsel, this is just simply not responsive to your question, so get her back on track."  Id. at 149:10-12.  Again, after a series of questions by Dr. Zachariah's attorney, the Court noted: "Counsel, excuse me, ma'am, this is – I'm not sure what this is about, who we're talking about, where this information is coming from, but are we talking damages here?  If we are, let's talk damages, please, but this rambling here is not going to go on, please."  Id. at 150:4-9.

10

Dr. Zachariah's continued unresponsive answers prompted the Court to instruct the witness that she would get one more chance to explain the bases for her emotional distress damages.  See id. at 150:19-151:1 ("And it's not part of this suit, okay.  Let's talk about how you have been affected, okay, you.  We'll give you one more chance to express to the jury how this has affected you emotionally, but . . . [t]his isn't about all these other clinics and the care there, okay, that's not what this suit is about."); 151:5-8 ("You're not entitled to ask for damages because of that unless it's related to the retaliation, so focus on your harm because of the retaliation.  I'll give you one more chance here.").  Even after the Court's final admonishment, Dr. Zachariah simply failed to establish any grounds upon which the jury could have found any proper emotional distress damages.

In addition to her testimony not offering sufficient evidence of emotional distress damages, it is also uncontroverted that Dr. Zachariah did not learn of the alleged scheme to retaliate against people who filed EEOs, including herself, until after Ms. Lainhart prepared her declaration on the eve of the filing of this lawsuit.  As such, there was no evidentiary support that she was subjected to a retaliatory hostile work environment polluted with insult, ridicule and intimidation.

Based on Dr. Zachariah's' own testimony, it is difficult to fathom how the alleged acts by Bay Pines warranted a landslide award of $1,000,000.  To the contrary, it is clear the damages pronounced by the jury simply are not supported by the evidence and are therefore improper.  Clearly, the jury was swayed by something beyond the evidence produced at trial.  An award of $1,000,000 (plus an economic damages award of $90,000), which constitutes over five times her Bay Pines annual salary, as

compensation for Dr. Zachariah's supposed emotional distress can only be described as beyond punitive.  Title VII does not permit punitive damages against the government, yet, given the facts of the case and the relevant evidence the jury should have considered, the notion of punishment appears to be the message the jury wanted to send.  Accordingly, absent a very substantial reduction in the exorbitant damages award, plaintiff will be unjustly enriched because of a supposed wrong which, as a matter of law, defendant did not commit.  Thus, the award must be reduced to an amount that a reasonable jury might have awarded for the de minimis injuries and/or mental anguish that plaintiff may have proved.

**2.      The Awards of $2,000,000 for Dr. Cote, $300,000 for Ms. Lainhart and $250,000 for Dr. Gowski for Emotional Distress are Excessive and Not Supported by the Evidence**

As with Dr. Zachariah, the testimonies by Drs. Cote and Gowski, as well as Ms. Lainhart, that they suffered emotional distress were controverted by reliable witnesses. Moreover, Dr. Cote admitted during her testimony that she did not know of any alleged scheme by the management at Bay Pines to retaliate against those who engaged in any EEO activity.  Because plaintiffs did not produce any corroborating evidence of emotional suffering or depression, or debilitating and permanently altered life-styles, the exorbitant jury awards in favor of these three plaintiffs are excessive and not supported by the evidence.  Like Dr. Zachariah, these plaintiffs all remain employees at Bay Pines, and they have received increases in salary and have even been promoted.  Thus, the evidence produced by plaintiffs in this case justify, if anything, a modest award of compensatory damages.

**D.**   **Given the Evidence, the Court Should Remit the Compensatory Awards to $30,000, Thereby Allowing Plaintiff to Elect Between a New Trial or the Award as Remitted**

This case does not involve facts that come close to justifying anything above a modest compensatory damages award.  Plaintiffs have all chosen to continue their employment at Bay Pines, there is simply no evidence of serious emotional distress that would justify the award and there is no evidence that plaintiffs suffered any period of unemployment, which is frequently a factor in cases supporting a significant damage award.  The awards in Muñoz, Harding and Martin discussed above all involved employees who were terminated after long periods of employment, and, in some cases, faced financial challenges.  See Johnson v. Stone Container, 88 F. Supp.2d 1295, 1298-99 (N.D. Ala. 2000) (reducing compensatory damage award from $50,000 to $7,500 in retaliation case where plaintiff was reprimanded, given an unfavorable performance review and suspended for one day with pay in retaliation for engaging in EEO activities).

At the outside, this case justifies either a nominal award or a modest compensatory damages award not to exceed $30,000 for each plaintiff, except for Dr. Zachariah, whose testimony does not provide a foundation for more than a modest compensatory award.  The jury's excessive award simply is not supported by the evidence and appears to be punitive in nature, which clearly is improper.

## Rule 3.01 Certification

Pursuant to Local Rule 3.01(g), counsel for defendant discussed this motion with plaintiffs' counsel, who opposes any reduction in the award of compensatory damages.

III.     <u>**CONCLUSION**</u>

For the reasons stated herein, defendant respectfully requests that its motion be

granted.

Dated: July 17, 2009                          Respectfully submitted,

                                              A. BRIAN ALBRITTON
                                              United States Attorney

                          By:     /s/ *Scott H. Park*
                                  Scott H. Park
                                  Assistant U.S. Attorney
                                  Identifying No. USA084
                                  501 W. Church Street, Suite 300
                                  Orlando, Florida 32801
                                  Telephone: (407) 648-7500
                                  Facsimile:  (407) 648-7588
                                  Email: scott.park@usdoj.gov

                          By:     /s/ *E. Kenneth Stegeby*
                                  E. Kenneth Stegeby
                                  Assistant United States Attorney
                                  USAO No. 112
                                  400 North Tampa Street, Suite 3200
                                  Tampa, Florida 33602
                                  Telephone: (813) 274-6303
                                  Facsimile No. (813) 274-6198
                                  Email: kenneth.stegeby@usdoj.gov

14

**CERTIFICATE OF SERVICE**

I hereby certify that on July 17, 2009, I electronically filed the foregoing **MOTION FOR REMITTITUR OR, IN THE ALTERNATIVE AT PLAINTIFFS' ELECTION, NEW TRIAL ON COMPENSATORY DAMAGES** with the Clerk of the Court by using the CM/ECF system, which will send notice of the filing to the following CM/ECF participant:

Joseph D. Magri, Esq.
Merkle & Magri
jmagri@merklemagri.com


            /s/ E. Kenneth Stegeby
Assistant United States Attorney

15