UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CLAUDIA G. COTE, M.D., et al.,

    Plaintiffs,

v.                                        Case No. 8:07-cv-1524-T-TBM

ERIC K. SHINSEKI, SECRETARY,
DEPARTMENT OF VETERANS AFFAIRS,

    Defendant.
_____/

**O R D E R**

THIS MATTER is before the court on the following:

1). **Dr. Diane Gowski's and Dr. Sally Zachariah's Motion for New Trial on Retaliation Claim** (Doc. 130) and Defendant's response in opposition (Doc. 147);

2) Defendant's **Motion for Judgment as a Matter of Law Under Fed. R. Civ. P. 50, or, in the alternative, Motion for New Trial Under Fed. R. Civ. P. 59** (Doc. 131) and Plaintiffs' response in opposition (Doc. 146); and

3) Defendant's **Motion for Remittitur, or, in the alternative, Motion for New Trial** (Doc. 132) and Plaintiffs' response in opposition (Doc. 145).[1]

---

[1] Plaintiffs Unopposed Motion for Hearing on Post-Trial Motions (Doc. 152) is **granted** as to these matters. Oral arguments were conducted September 16, 2009.
    Plaintiffs have also filed their Motion for Equitable Relief (Doc. 150) which Defendant opposes (Doc. 158). The court finds it convenient to address on this Order the equitable claims for back pay/lost wages there addressed along with the matter of prejudgment interest.

I.

By way of pertinent background, this litigation was instituted by the Plaintiffs against their employer seeking damages as a result of their employer's alleged discrimination and retaliation against them. Specifically, all four Plaintiffs raised claims of discrete acts of retaliation as well as a retaliatory hostile work environment based upon their prior EEO activity. Additionally, Dr. Cote ("Cote") and Dr. Zachariah ("Zachariah") raised claims of gender discrimination and Dr. Gowski ("Gowski") raised a claim of religious discrimination. The matter was tried to a jury who found in favor of the Plaintiffs and awarded non-economic damages as follows: $2,000,000 to Cote; $1,000,000 to Zachariah; $250,000 to Gowski; and $300,000 to Roxanne Lainhart Bronner ("Lainhart"). In addition, the jury awarded damages for lost wages to Cote, Zachariah, and Gowski, in the amounts of $80,000; $90,000; and $16,000, respectively.[2] All of the Plaintiffs remain employed by Defendant.

II.

A.

In its Motion for Judgment as a Matter of Law under Fed. R. Civ. P. 50, or in the alternative, Motion for New Trial under Fed. R. Civ. P. 59 (Doc. 131), Defendant seeks to set aside the verdict and requests entry of a judgment as a matter of law on the grounds that the Eleventh Circuit has not yet recognized a retaliatory hostile work environment claim. Moreover, even if such claims were recognized in this Circuit, Plaintiffs may not establish a

---

[2]A single form of verdict was used, but the jury rendered separate verdicts as to each Plaintiff. *See* (Doc. 121).

retaliatory hostile workplace claim by merely cobbling together a series of discrete acts. A hostile workplace claim has always been based upon a work environment permeated with discriminatory insult, intimidation, and ridicule, and such evidence was not presented here.

Defendant further contends that the monetary awards for lost wages to Cote, Zachariah, and Gowski were not supported by the evidence. Specifically, as to Cote, the measure for an award of back pay should have been based on the difference between her actual wages and what she could have earned had she received the position as chief of pulmonary section which is best evidenced by a comparison to Dr. Anderson's salary.[3] Regarding Gowski, the jury found no religious discrimination and further that Defendant would have made the same decision on the disparate treatment retaliation claim. While Gowski prevailed on her retaliatory hostile work environment claim, Defendant submits that lost wages are not an element of damages for such claim where, as here, the Plaintiff is not constructively discharged.[4] Similarly, as to Zachariah, the jury award for lost wages cannot stand where she too prevailed only on her retaliatory hostile work environment claim.

Lastly, Defendant argues that a new trial is warranted because admission of the testimony of Dr. Durr and Dr. Lopez regarding an alleged environment of retaliation at Bay Pines VA was error because their testimony cannot logically or reasonably be tied to the decisions involving the Plaintiffs because Durr and Lopez filed their EEO complaints after their terminations.

---

[3]In support, Defendant refers to Defense Trial Exhibit #3.

[4]In support, Defendant cites *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 474-75 (6th Cir. 2009); *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 317 (3d Cir. 2006).

In response, Plaintiffs urge that a retaliatory hostile work environment claim has implicitly been recognized by the Eleventh Circuit, and moreover, Plaintiffs submit that ample evidence was presented to the jury to support their retaliatory hostile work environment claims which may be established by discrete acts which collectively result in a retaliatory hostile work environment distinct from the discrete acts. On Defendant's argument that Plaintiffs are not entitled to lost wages because of the jury's findings on the same decision defense, Plaintiffs submit that any such argument was waived by virtue of the Defendant's failure to object to the form of the verdict before the jury was dismissed and further waived by its failure to object to the jury instructions which provided that lost wages were appropriate under each claim made by the Plaintiffs. Plaintiffs also urge that by the form of the verdict, the jury could have found the same decision defense applied to some but not all of the retaliatory adverse employment actions, but the jury was not given the opportunity to address each action individually to determine whether the "same decision" applied to each. On the issue of back pay awarded to Cote, Plaintiffs argue that the jury had ample evidence to support their award. Lastly, in response to Defendant's argument about the admission of the Durr and Lopez testimony, Plaintiffs urge the admission of such testimony was relevant and appropriately limited by the court under Rules 404(b) and 402.

      Fed. R. Civ. P. 50(b) provides in pertinent part:

> If the court does not grant a motion for judgment as a matter
> of law made under 50(a), the court is considered to have sub-
> mitted the action to the jury subject to the court's later deciding
> the legal questions raised by the motion. No later than 10 days
> after the entry of judgment . . . the movant may file a renewed
> motion for judgment as a matter of law and may include an
> alternative or joint request for a new trial under Rule 59.

In considering a motion under Rule 50(b), the court must view all of the evidence adduced at trial and draw all reasonable inferences in a light most favorable to the nonmoving party. *Montgomery v. Noga*, 168 F.3d 1282, 1289 (11th Cir. 1999) (citing *Walker v. NationsBank of Fla. N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995)); *see also Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989). The court may not re-weigh the evidence, make credibility determinations, or substitute its judgment for that of the jury. *Ard v. Sw. Forest Indus.*, 849 F.2d 517, 520 (11th Cir. 1988); *Watts v. Great Atl. & Pac. Tea Co.,* 842 F.2d 307, 310 (11th Cir. 1988). "If reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions based on the evidence presented, the motion should be denied." *Montgomery*, 168 F.3d at 1289; *see also Verbraeken*, 881 F.2d at 1045.

Under Rule 59, a trial judge "may, on motion, grant a new trial on all or some of the issues–and to any party– . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1). A motion for new trial is left to the discretion of the trial court. *Lambert v. Fulton County*, 253 F.3d 588, 595 (11th Cir. 2001)*; Hercaire Int'l, Inc. v. Argentina*, 821 F.2d 559, 562 (11th Cir. 1987). A less stringent standard applies to a motion for new trial than to a motion for judgment as a matter of law; even where there are insufficient grounds for granting a renewed motion for judgment as a matter of law under Rule 50(b), a motion for new trial may be granted where the verdict is against the great weight of the evidence. *Dudley v. Wal-Mart Stores, Inc.*, 166 F.3d 1317, 1320 n.3 (11th Cir. 1999). Although a trial judge cannot weigh the evidence on a renewed motion for judgment as a matter of law, the judge is free to weigh

5

the evidence in a motion for a new trial and must view both the evidence favoring the jury verdict and the evidence in favor of the moving party. *Williams v. City of Valdosta*, 689 F.2d 964, 973 (11th Cir. 1982) (citing *Rabun v. Kimberly-Clark Corp.*, 678 F.2d 1053, 1060 (11th Cir. 1982)). "[W]hen the trial involves simple issues, highly disputed facts, and there is an absence of 'pernicious occurrences,' trial courts should be considerably less inclined to disturb a jury verdict. . . . On the other hand, in cases involving complex issues, facts not highly disputed, and events arguably marred by error, trial courts have more freedom to evaluate independently the verdict." *Williams*, 689 F.2d at 974; *see also Hardin v. Hayes*, 52 F.3d 934, 938 (11th Cir. 1995).

Starting with Defendant's argument that it was error to allow Drs. Durr and Lopez to testify, I find no basis for awarding a new trial for the admission of their testimony. The scope of their testimony was appropriately limited to relate to issues concerning the retaliatory hostile work environment at Bay Pines. Despite slight differences in circumstances, the testimony was probative of the Plaintiffs' claims. Accordingly, Defendant's motion is denied on this ground.

As for Defendant's argument that a claim for retaliatory hostile work environment does not exist in this Circuit, that issue was carefully considered and rejected on the motions for summary judgment. I am not inclined to revisit the issue on this motion.[5] Nor can I agree that there was insufficient evidence to support the verdicts on these claims. In addition to

---

[5]*See* (Doc. 71 at 23 n.21). As there noted, the Second, Seventh, Ninth and Tenth Circuits have recognized an employer's potential liability under a theory of retaliatory hostile work environment.

proving a number of discrete acts of retaliation, Plaintiffs offered evidence of a workplace permeated with the threat of and fear from acts of retaliation by hospital officials against persons, in particular, each of these Plaintiffs, raising EEO complaints. In the end, the jury could properly find an unlawful employment practice arising from this oppressive and threatening work environment itself separate and apart from the many acts of retaliation.

On the issue of lost wages awarded to the doctors, Plaintiffs argued to the jury that it should award Cote $71,265 in lost wages in connection with her denial of the section chief of pulmonary. The jury awarded $80,000. Referencing Plaintiffs' Trial Exhibit #16, Plaintiffs' counsel advised the jury that the calculation of lost wages was derived by comparing the average salary of a staff physician in the pulmonary department to the average salary of a section chief for that department.[6] Based on their formula, according to Plaintiffs, Cote lost at least $18,091 per year due to her not receiving the section chief position. Plaintiffs argued that Cote should receive these damages for a period of three years ten months.[7] In post-trial motions, Plaintiff urges a verdict in the amount argued for at trial, $71,265, is appropriate.

---

[6] Counsel explained that they used the midpoint between the minimum and maximum salary for a staff physician in the pulmonary department, which was $146,909 according to Pay Table 2 of Plaintiffs' Exhibit #16. The midpoint of the minimum and maximum salary for a section chief position according to Pay Table 2 is $165,000. The difference between the two represented an average difference in salary of $18,091 per year for a staff physician versus a section chief. Plaintiffs' approach was explained in greater detail at the hearing on post-trial motions than it was presented to the jury. At oral argument, Plaintiffs conceded a calculation error in that the annual salary difference of $18,591, as opposed to $18,091, was used to compute Cote's damages. Thus, using Plaintiffs' theory and the correct figure of $18,091, the lost wage damages to Cote would be $69,348.83.

[7] This period of time was calculated by Plaintiffs from September 1, 2005, through July 1, 2009.

7

However, as noted, based on representations at oral argument, if Plaintiffs' measure of damages was proper, the actual award to Cote should be $69,348.83.

With regard to Zachariah, Plaintiffs argued that the jury should award $6,730 in lost wages due to her wrongful suspension and $82,364 for the loss of the section chief of neurology position, for total lost wages of $89,094 or alternatively $132,364 for the loss of the service chief position, for total lost wages of $139,094.[8] Again, argument was presented that lost wages could be measured by comparing the midpoint of a staff physician's salary with that of the midpoint salary for a section or service chief.[9] The jury awarded Zachariah $90,000 in lost wages. (Doc. 121 at 8). In post-trial motions, Plaintiffs in essence submit the back pay award to Zachariah should be $89,094. *See* (Doc. 150 at 5). However, in correcting for calculation errors, Plaintiffs acknowledged at the hearing this figure would be less. Employing Plaintiffs' theory, this figure should have been $68,503, which represents an annual salary loss for three years of $20,591 for the loss of section chief, plus $6,730 due to her suspension.

---

[8]At oral argument, Plaintiffs' counsel conceded these figures were erroneously based on lost wages calculated for four years when it should have been calculated based on three years.

[9]Plaintiffs referenced Pay Table 1 of Plaintiffs' Exhibit #16. Applying a similar analysis to Pay Table 1 reveals a midpoint salary for a staff physician of $134,409; a midpoint salary for a section chief of $155,000; and a midpoint salary for a service chief of $167,500. Thus, under Plaintiffs' theory, the annual salary difference between an average staff physician and a section chief would be $20,591, and the annual salary difference between an average staff physician and a service chief would be $33,091. Extrapolating those figures out three years would equal lost wage figures of $61,773 for not being a section chief and a loss of $99,273 for not being a service chief.

As to Gowski, Plaintiffs argued that the jury should award total back pay in the amount of $12,500 which represents the loss of "discretionary increases," and $3,252 in lost wages resulting from her suspension.[10] The jury awarded Gowski $16,000 for lost wages. In post-trial motions, Plaintiffs submit the back pay award to Gowski should be $15,752. *See* (Doc. 150 at 6).

In response, the Defendant submits that lost wages are not damages available to Zachariah and Gowski, and thus Defendant is entitled to judgment as a matter of law on those awards. By its argument, the jury reached the matter of damages for Gowski and Zachariah only in connection with their retaliatory hostile work environment claims.[11] *See* (Doc. 121). As a matter of law, lost wages are not recoverable as an element of damages in a hostile work environment claim where a plaintiff is not constructively discharged. *See Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 474-75 (6th Cir. 2009); *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 317 (3d Cir. 2006).

As discussed below, Defendant urges that as to Gowski and Zachariah, the verdict is properly understood as an attempt by the jury to award back pay or lost wages on the hostile work environment claim alone and such is precluded as a matter of law. I agree. Under the

---

[10]Counsel originally requested $7,500 in discretionary pay increases, but in his final closing argument he clarified the number should be $12,500 for that aspect of Gowski's damages. While it was stated to the jury that the total for Gowski would then be $15,250, the total of $12,500 and $3,252 equals $15,752.

[11]While the jury did find on Gowski and Zachariah's retaliation claims that an adverse employment action or actions occurred, it nevertheless found that Defendant would have taken the same employment actions for other reasons even in the absence of the Plaintiffs' statutorily protected activity. Thus, no damages are recoverable on Gowski and Zachariah's discrete claims of retaliation given the jury's verdict on the same decision defense.

9

verdict, the only claim on which the jury considered damages for these two doctors was the hostile work environment claim. On such claims, the award of lost wages to Gowski and Zachariah is precluded as a matter of law. "Where a portion of a verdict is for an identifiable amount that is not permitted by law, the court may simply modify the jury's verdict to that extent and enter judgment for the correct amount." *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1330 (11th Cir. 1999) (citing *New York, L.E. & W.R. Co. v. Estill*, 147 U.S. 591 (1893)). Accordingly, the jury's award to Gowski and Zachariah for back pay or lost wages fails as a matter of law, and the verdict shall be adjusted accordingly.

As to Cote, back pay or lost wages are recoverable on her retaliation claim, upon which the jury found in her favor. However, Defendant urges that the amount awarded for lost wages was not supported by the evidence. Rather, Defendant argues that the appropriate measure of damages for Cote is the difference between her actual salary for the relevant time period and the salary of Dr. Anderson who was selected and served as the section chief of pulmonary.[12] Defendant references Defense Trial Exhibit #3 which is a table of actual physician salaries in the Medicine Service at Bay Pines from 2006 to 2008. According to Defendant's Exhibit #3, in 2006, Cote and Anderson were both paid $173,457; in 2007, Anderson's salary was $188,497 and Cote's was $185,242; and in 2008, Anderson's salary

---

[12]In support, Defendant cites *Akouri v. State of Florida Department of Transportation*, 408 F.3d 1338, 1343 (11th Cir. 2005) for the proposition that back pay is "the difference between the actual wages earned and the wages the individual would have earned in the position that, but for the discrimination, the individual would have attained." Plaintiff argues that what Dr. Anderson earned is not an appropriate measure as to what Cote would have earned because Anderson's special/market pay is lower due to discrimination against him based upon his age as testified to by Dr. Durr at trial. (Doc. 165 at 2).

was $191,545 and Cote's salary was $187,910. Based upon these figures, Defendant submits that there is no basis in the evidence for an award of $80,000 to Cote in lost wages, and that in using Plaintiffs' Exhibit #16 to calculate such losses was pure speculation on the jury's part. Defendant submits that Cote's lost wages are approximately $10,000, based upon the difference between her salary and the salary received by Anderson, assuming a similar wage differential for 2009.[13]

Back pay is the difference between the actual wages earned and the wages the individual would have earned in the position that, but for the discrimination, she would have attained. In calculating back pay, "exactitude is not required." *Akouri*, 408 F.3d at 1343 (quoting from *Pettway v. Am. Cast Iron Pipe Co.*, 494 F.2d 211, 260 (5th Cir. 1974)). In this Circuit, in a Title VII action, back pay is generally considered an equitable remedy. *Waldrop v. So. Co. Svcs., Inc.*, 24 F.3d 152, 158 n.10 (11th Cir. 1994); *Williams v. City of Montgomery*, 742 F.2d 586, 589 (11th Cir. 1984); *see also* 42 U.S.C. § 2000e-5(g). Thus, the jury's verdict is advisory in nature.

Given the two components of these doctors' pay, there appears no precise measure for determining back pay or lost wages. However, the court's decision is guided by the recognition that "an award of back pay is designed to make a plaintiff whole, not to give the plaintiff a windfall or to punish the employer." *Joseph v. Publix Supermarkets, Inc.*, Nos. 04-

---

[13]The court directed the parties to file additional annualized wage information for 2005 and 2009. (Doc. 164). The parties responses are found at Docs. 165 and 166. According to Defendant's supplemental filing, in 2005 Cote earned $168,017 and Anderson earned $171,017. For 2009, Cote's annualized salary is $194,304 and Anderson's is $198,394. *See* (Doc. 166).

12042, 04-13262, 2005 WL 2249887, at *9 (11th Cir. Sept. 16, 2005) (citing *Franks v. Bowman Transp. Co.*, 424 U.S. 747 (1976)). The evidence reveals that Anderson has been employed with the VA for 25 years; Cote has been with the VA for 17 years. Thus, Anderson's base pay component was higher. *See* (Doc. 140 at 133). Yet, a comparison of their market pay reflects that Cote has consistently received a higher market pay than Anderson in the years 2006 to the present, presumably under the evidence a reflection of her increased value to the hospital. In light of that, I agree with Plaintiffs that a straight comparison to what Anderson earned in the section chief position is not the best indicator of what Cote would have earned had she received the position. On the other hand, I am unconvinced that Plaintiff's proposed formula is a reasonable or even logical representation of what she would have earned in light of the actual pay data submitted by the parties. Absent a precise measure for lost wages, but using Anderson's pay as section chief as a baseline and factoring in an increased value for Cote's services as evidenced by a comparison of their respective market pay figures, I conclude that a reasonable award for Cote's back pay is $42,918.89.[14]

---

[14]According to Plaintiff's Trial Exhibit 16, a pulmonary staff physician could make up to $200,000. Thus, Cote's salary of $173,457 in 2006 is equivalent to 86.73 % of the top pay for a pulmonary staff physician. In comparison, Anderson was paid the same amount ($173,457) as a section chief which is equivalent to 80.68 % of the top of the range ($215,000) for a pulmonary section chief. A comparison of their salaries as percentages reveals that Cote was paid roughly 6% more (in 2006) for her staff position than Anderson was paid as a section chief. Using Anderson's salary as a starting point and assuming Cote would have received approximately a 6% higher salary (to reflect her increased value) equates to a projected salary of $183,951.15 (Anderson's salary multiplied by the percentile difference), which amounts to a difference in salary to Cote of $10,494.15 for 2006. As illustrated below, carrying out the same analysis for 2007, 2008, and six months of 2009, would equal a total back pay award to Cote of $42,918.89. Because of the insufficient data

12

On the matter of prejudgment interest, such is left to the discretion of this court.[15]
*See Loeffler v. Frank,* 486 U.S. 549 (1998). While acknowledging that there is no *per se* rule requiring that prejudgment interest be included in a back pay award, some courts have recognized a presumption that prejudgment interest be awarded on a back pay award to a successful Title VII plaintiff. *See Richardson v. Tricom Pictures & Prods., Inc.*, 334 F. Supp.

---

provided for 2005 such that it is not clear when, if at all in 2005, an increase in Anderson's pay for his appointment as section chief occurred, the lost wages are calculated generally beginning the first full year, i.e., 2006. This is also consistent with the historical data that Cote's market pay was lower than Anderson's in 2005, and thus highly speculative as to whether she would have earned more in 2005.

The following table illustrates the calculations for the years 2006 through 2009. Since Plaintiff is only receiving back pay for the first half of 2009, that figure has been divided in half. Thus, the back pay award to Cote is based upon adding the salary difference for 2006, 2007, 2008, and half of 2009 (10,494.15 + 12,585.60 + 12,963.24 + 6,875.90) which equals $42,918.89.

|  | Cote | Anderson | % Diff. | Cote Projected Salary | Difference |
|---|---|---|---|---|---|
| 2006 Salary | $173,457 | $173,457 |  | $183,951.15 | $10,494.15 |
| Percentile | 86.73% | 80.68% | 6.05% |  |  |
| 2007 Salary | $185,242 | $188,497 |  | $197,827.60 | $12,585.60 |
| Percentile | 92.62% | 87.67% | 4.95% |  |  |
| 2008 Salary | $187,910 | $191,545 |  | $200,873.24 | $12,963.24 |
| Percentile | 93.96% | 89.09% | 4.87% |  |  |
| 2009 Salary | $194,304 | $198,394 |  | $208,055.79 | $13,751.79 |
| Percentile | 97.15% | 92.28% | 4.87% |  |  |

[15]Prejudgment interest is demanded in Plaintiffs' Motion for Equitable or Prospective Relief (Doc. 150) and is appropriately addressed here.

13

2d 1303, 1316 (S.D. Fla. 2004), *aff'd*, No. 05-11421, 2006 WL 1559756 (11th Cir. June 8, 2006). By my consideration, prejudgment interest is appropriate here to "adjust[ ]the back pay award for inflation and reflect[ ] the present day value of income that should have been paid to the [Plaintiff] in the past." *Id.* (quoting *EEOC v. Joe's Stone Crab*, 15 F. Supp. 2d 1364, 1379 (S.D. Fla. 1998)). In the Eleventh Circuit, the "interest rate for prejudgment interest on back pay awards under Title VII depends on the IRS prime rates calculated in accordance with 28 U.S.C. § 1961." *McKelvy v. Metal Container Corp.*, 854 F.2d 448, 453 (11th Cir. 1988); *see also EEOC v. Guardian Pools, Inc.*, 828 F.2d 1507, 1512 (11th Cir. 1987) (NLRA method is to use the adjusted federal prime rates established by the IRS). The precise meaning of these holdings is not without some confusion. *See Armstrong v. Charlotte County Bd. of County Com'rs*, 273 F. Supp. 2d 1312, 1320-21 (M.D. Fla. 2003). Consistent with the rationale employed by the court in *Armstrong*, I conclude that Cote is entitled to receive prejudgment interest based on the average IRS prime underpayment rate for the period from Anderson's assumption of the position of section chief to July 1, 2009.

Thus, Defendant's Motion for Judgment as a Matter of Law under Fed. R. Civ. P. 50, or in the alternative, Motion for New Trial under Fed. R. Civ. P. 59 (Doc. 131) is **granted** to the extent that the awards of back pay to Drs. Gowski and Zachariah are vacated and the judgment shall be amended accordingly. As for Dr. Cote, the motion is **denied** and the court awards back pay in the amount of $42,918.89 together with prejudgment interest. Upon

submission by the parties of the calculation of the prejudgment interest, the judgment shall be amended accordingly.[16] The alternative request for a new trial is also **denied**.

B.

Plaintiffs, Gowski and Zachariah, seek a new trial under Fed. R. Civ. 59 on their retaliation claims on the basis of the possibility of inconsistent responses in the jury verdict and the court's failure to give jury instructions requested by the Plaintiffs. Specifically, while urging that the verdict is not inconsistent, Plaintiffs urge that *if* the jury's findings on the "same decision" defense interrogatories and its award of lost wages renders the verdicts inconsistent, a new trial on the retaliation claims should be ordered. They urge that if the verdicts are inconsistent, it was due to the failure of the court to instruct the jury that it was to consider each separate adverse employment action as a separate claim and accordingly determine whether the "same decision" defense applied to each separate claim.

In response, Defendant asserts that the jury's special interrogatory answers are not inconsistent. As presented, the jury obviously believed that lost wages was an element of damages it could award as part of the retaliatory hostile workplace claims. While such belief may have been mistaken, it reveals there is no such inconsistency as proposed by Plaintiffs. Defendant urges that this understanding of the verdicts is the reasonable interpretation of the jury's answers to the special interrogatories and does not require the court to speculate. [17]

---

[16]The parties are directed to submit, preferably by agreement, a proposed calculation of prejudgment interest within ten (10) days of the date of this Order.

[17]Defendant again urges that lost wages are not available as an element of damages for a retaliatory hostile work environment claim where, as here, Plaintiffs were not constructively discharged.

Defendant concludes that because the jury's verdicts are not inconsistent, the proper procedure in this case is a remittitur, and not a new trial on Plaintiffs' retaliation claims.

Here, I believe the Defendant's reconciliation of the verdicts is wholly correct, and Plaintiffs do not demonstrate otherwise.[18] In short, because the verdicts are not inconsistent, the contingent request for a new trial on the retaliations claims by these two doctors is appropriately **denied**. In light of the Plaintiffs' general arguments at trial concerning lost wages and in light of the interrogatories propounded in the verdict, the verdict is best understood as an attempt by the jury to award lost wages to these two Plaintiffs on their claims of retaliatory hostile work environment, the only claims they fully succeeded on. As set forth above, the law does not permit such an award in the absence of constructive discharge and the court has remedied that defect. As for the claim that the jury instructions were inadequate, I again find that they were adequate to state the applicable law of retaliation and did address the concerns here expressed by Plaintiffs, as did their counsel's closing arguments. While the instruction on damages could have been clearer, it was not improper and the corrective action taken above on the award of lost wages for these two doctors effectively cures any shortcomings in the jury instructions on damages.

C.

By its Motion for Remittitur on compensatory damages, Defendant argues that the jury award was not supported by the evidence and exceeds the maximum limit of a reasonable

---

[18]Given that the jury never reached the issue of damages on these doctors' retaliation claims, the logical conclusion is the jury intended to award back pay on the Plaintiffs' hostile work environment claims.

range given the totality of the evidence in this case. The Defendant submits that, at a minimum, the award must be capped at $300,000 per Plaintiff, pursuant to 42 U.S.C. § 1981a(b)(3)(D). However, Defendant urges further that a comparison of comparable cases demonstrates that the awards may, and should, be reduced below the cap of $300,000. As to Zachariah, Defendant argues that she wholly failed to articulate any grounds for emotional distress damages, even when given multiple opportunities by the court. Thus, her award, if any, should be substantially reduced to a nominal amount. As to Plaintiffs, Cote, Gowski and Lainhart, Defendant urges their emotional distress damages should be reduced to $30,000.

In response, Plaintiffs submit that there was sufficient competent evidence to support the jury's awards. Moreover, the amounts suggested by Defendant are "ridiculously low" and are further evidence of Defendant's callous attitude which gave rise to the retaliatory scheme in the first place. Plaintiffs argue several cases supporting that the amounts awarded were reasonable, particularly given the evidence in this case of reputations that were developed over decades being ruined, professional advancement derailed, jobs or promotions lost, and the constant targeting of them that occurred in this workplace.[19]

---

[19]Plaintiffs cite the following cases as support for their position that the jury's award here was within the range of reasonableness: *Bogle v. McClure*, 332 F.3d 1347, 1359 (11th Cir. 2003); *Singleton v. City of New York,* No. 07-1105-cv, 2009 WL 223875 (2d Cir. Jan. 30, 2009); *Monteagudo v. Asociacion de Empleados*, 554 F.3d 164 (1st Cir. 2009); *Marchisotto v. City of New York*, No. 07-1794-cv, 2008 WL 4831419 (2d Cir. Nov. 7, 2008); *Rowe v. Hussmann Corp.*, 381 F.3d 775 (8th Cir. 2004); *Madison v. IBP, Inc.*, 330 F.3d 1051, 1054 (8th Cir. 2003); *Peyton v. DiMario*, 287 F.3d 1121, 1128 (D.C. Cir. 2002); *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 513-14 (9th Cir. 2000); *Kerr-Selgas v. American Airlines, Inc.*, 69 F.3d 1205 (1st Cir. 1995)*; Wilmington v. J. I. Case Co.*, 793 F.2d 909, 922 (8th Cir. 1986); *O'Sullivan v. City of Chicago*, 474 F. Supp. 2d 971 (E.D. Ill. 2009); *Orr v. Mukasey*, No. 06-1775 (FAB), 2009 WL 1922254 (D. P.R. July 7, 2009); *Quinby v. WestLB AG,* No. 04 Civ. 7406(WHP), 2008 WL 3826695 (S.D. N.Y. Aug. 15,

The Defendant's remittitur argument is two-fold. First, Defendant contends that, at a minimum, the emotional distress damages awarded to the Plaintiffs are subject to the $300,000 federal statutory cap for Title VII cases. While not conceding the point, the Plaintiffs offer no contrary argument. In pertinent part, 42 U.S.C. § 1981a provides:

> The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, . . ., shall not exceed, for each complaining party– in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000.

42 U.S.C. § 1981a(b)(3)(D). Pursuant to this provision, the recovery of emotional damages by Cote and Zachariah is capped at a maximum award of $300,000.[20] The court need take no action on this basis in the case of Gowski and Lainhart, since the jury awarded them $250,000 and $300,000 respectively, amounts within the statutory cap. *See* (Doc. 121 at 4, 14).

---

2008); *Hudson v. Chertoff*, 473 F. Supp. 2d 1286, 1291 (S.D. Fla. 2007); *Boone v. Pennsylvania Office of Vocational Rehabilitation*, No. 1:CV-04-0588, 2006 WL 1620222 (M.D. Pa. June 8, 2006); *Goico v. Boeing Co.*, 358 F. Supp. 2d 1028, 1031 (D. Kan. 2005); *Velez v. Roche*, 335 F. Supp. 2d 1022 (N.D. Cal. 2004); *Armstrong v. Charlotte County Board of County Commissioners*, 273 F. Supp. 2d 1312, 1314 (M.D. Fla. 2003); *Mondzelewski v. Pathmark Stores, Inc.*, No. Civ.A. 96-359 MSS, 2000 WL 654137 (D. Del. Mar. 20, 2000). *See* (Doc. 145 at 4-5).

[20]It appears somewhat of a misnomer to label the reduction of the jury award to reflect the statutory cap a "remittitur." This Circuit has defined "remittitur" as a "substitution of the court's judgment for that of the jury regarding the appropriate award of damages." *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1331 (11th Cir. 1999). However, "where a portion of a verdict is for an identifiable amount that is not permitted by law, the court may simply modify the jury's verdict to that extent and enter judgment for the correct amount." *Id.* at 1330 (citing *New York, L.E. & W.R. Co. v. Estill*, 147 U.S. 591 (1893)). Such is the approach dictated here in the first instance.

By its second argument, Defendant urges that based on a review of comparable cases and the evidence presented at trial or lack thereof, a further reduction in each Plaintiff's damages is warranted. Specifically, Defendant requests that Gowski, Cote, and Lainhart's awards for emotional pain and mental anguish be reduced to $30,000 each, and Zachariah's award be reduced to a nominal amount less than $30,000. (Doc. 132 at 13).

A trial judge must "grant a new trial or remittitur when the award exceeds the maximum limit of a reasonable range within which the jury may properly operate." *Warren v. Ford Motor Credit Co.*, 693 F.2d 1373, 1380 (11th Cir. 1982). However, a "jury's otherwise supportable verdict [should] stand unless [it is] grossly excessive or shocking to the conscience." *Brown v. Freedman Baking Co.*, 810 F.2d 6, 11 (1st Cir. 1987). In considering whether to grant a remittitur, the court must not substitute its judgment of damages for that of the jury. *Bonura v. Sea Land Serv. Inc.*, 505 F.2d 665, 669 (5th Cir. 1974).

By my consideration, the respective awards for emotional pain and suffering as hereby reduced to the statutory cap or as otherwise awarded are neither grossly excessive nor shocking to the conscience and when the whole of the evidence is considered, within the range of reasonable verdicts as demonstrated across the reported cases. While Plaintiffs brought varying degrees of articulation of their emotional hurt, and Zachariah mostly demonstrated her hurt as opposed to articulating the same, this jury could properly determine that each was deeply affected and emotionally touched by the hostile retaliatory work atmosphere surrounding each of them daily. By Plaintiffs' evidence, the oppressive, threatening conduct of the senior administrators of this hospital rendered them afraid to come to work for fear of being further reprimanded or even terminated simply because they sought to defend their

19

rights. Each had her professional standing deliberately attacked along with her reputation. Each demonstrated some harm to their personal well-being and their family life as well. In light of all the evidence, I cannot conclude that the jury awards to Gowski and Lainhart of $250,000 and $300,000, respectively, are beyond the realm of reason. Similarly, the reduced awards of $300,000 each to Cote and Zachariah for emotional distress damages do not shock the conscience, nor do they exceed the maximum limit of a reasonable range in which a jury may operate. Thus, I conclude that no further reduction is necessary or appropriate as to Cote and Zachariah.[21]

Accordingly, Defendant's Motion for Remittitur (Doc. 132) is **granted** in part. As remitted by the court, Plaintiffs are not entitled to an election of a new trial. The judgment shall be amended accordingly.

As to the remaining issues related to prospective and injunctive relief and the matter of costs and fees, such shall be addressed by separate order.

**Done and Ordered** at Tampa, Florida, this 6th day of October 2009.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record

---

[21]To the extent that Plaintiffs seek prejudgment interest on the awards for compensatory damages, the requests are denied.