IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CLAUDIA G. COTE, M.D.,
DIANE T. GOWSKI, M.D.,
SALLY B. ZACHARIAH, M.D.
And ROXANNE LAINHART,

    Plaintiffs,

v.                              Case No.: 8:07-cv-01524-T-30 TBM

ERIC K. SHINSEKI, SECRETARY,
DEPARTMENT OF VETERANS AFFAIRS,

    Defendant.
_____/

## PLAINTIFFS' FIRST MOTION TO ENFORCE ORDER GRANTING INJUNCTIVE AND EQUITABLE RELIEF AND FOR ADDITIONAL SUCH RELIEF

    Plaintiffs move this court to order the Defendant, Eric K. Shinseki, Secretary, Department of Veterans Affairs ("Secretary"), to permanently assign Dr. Gowski into the MICU. In the alternative plaintiffs request that this court order the secretary to continue to rotate Dr. Gowski through the MICU as ordered and contemplated in the court's November 23, 2009 Order Granting Injunctive and Other Equitable Relief (Doc. 181) ("Order"). Further, plaintiffs move the court to reiterate that defendant is to cooperate in facilitating Dr. Gowski's efforts to obtain the necessary credentials for the MICU.

    Paragraph 7 of the court's Order requires that Dr. Gowski be given a full rotation through the MICU and "rotations through MICU **thereafter** consistent with any nondiscriminatory practice then in effect at Bay Pines VA for rotating physicians." (emphasis added). In addition, the court ordered that "the Secretary or his assigns shall also direct that the Director of Bay Pines

VA, the Chief of Staff, the Chief of Medicine and other appropriate personnel cooperate in facilitating Dr. Gowski's obtaining any necessary privileges and/or credentials for her assignment and rotation through the MICU."

In its January 5, 2010 motion for relief from the Order (Doc. 190), the government asserted, among other things, that it intended to permanently reassign Dr. Gowski back to the hospital wards after only one rotation in the MICU despite the court's Order. As noted above, the court ordered subsequent rotations for Dr. Gowski consistent with any nondiscriminatory practice then in effect at Bay Pines for rotating physicians. However, Bay Pines asserts that since there is no longer a practice in effect for rotating **hospitalists** through the MICU, Bay Pines is not required under the Order to rotate Dr. Gowski through the MICU after her first rotation. In the plaintiffs' January 19, 2010 response to the government's motion for relief from the Order (Doc. 191), plaintiffs pointed out and objected to the government's intention with respect to Dr. Gowski's MICU rotation and suggested that the court permanently reassign Dr. Gowski to the MICU. In its February 3, 2010 order (Doc. 194) denying the government's motion for relief from the Order, the court noted the defendant's announced intention not to follow the Order regarding Dr. Gowski's rotation and the plaintiffs' suggestion that she be permanently reassigned to the MICU. *See* Doc. 194, p 2. However, the court stated that it "does not on this motion [i.e. the government's motion for relief from the Order] otherwise address plaintiffs' contention that defendant will not fairly implement this aspect of the court's Order." *Id* at p. 4. This issue is now ripe for adjudication because the government has now carried out its announced intention not to follow the court's Order concerning Dr. Gowski's rotation through the MICU.

As ordered by the court, Bay Pines put Dr. Gowski on a two month rotation in the MICU for March and April, 2010.[1] After Dr. Lin originally stopped rotating any hospitalists through the MICU, the MICU was staffed by two rotating pulmonologists. The normal rotation for the pulmonologists through the MICU is two months in the MICU, then two months out of the MICU (i.e. to handle pulmonology clinics full time) and then two months back in the MICU, etc. Rather than following this practice with Dr. Gowski after the court's Order, Dr. Lin advised Dr. Gowski that she would not be put back in the MICU after one rotation (i.e. the March and April, 2010 rotation) even though the court's Order specifically ordered subsequent rotations. Further, Bay Pines has made no effort to rotate Dr. Gowski back to the MICU since the end of April, and has not responded to her emails as to when she will be rotated back to the MICU. Under the two month rotation followed in the MICU with respect to the pulmonologists, Dr. Gowski should have been rotated back into the MICU for a two month rotation beginning in July  However, in violation of the court's Order, Dr. Gowski has not been rotated back to the MICU for July and August.

Bay Pines' position that Dr. Gowski will not have any subsequent rotations in the MICU because there is presently no rotation for **hospitalists** through the MICU is not only a blatant violation of the court's Order, but evidences continuing retaliation and a retaliatory attitude toward the plaintiffs. First, it should be noted that Bay Pines' reaction to the verdict in this case and the Order was not to correct the retaliation and attempt to give Dr. Gowski the relief intended by the court. Rather, Bay Pines attempted to parse the words of the Order in a bad faith attempt to try to find some hypertechnical interpretation to avoid the relief ordered by the court.

---

[1] Bay Pines was ordered to start this rotation within 120 days of the November, 2009 Order. While Bay Pines complied, it did wait until the last possible month to comply.

This is not only disrespectful of the court, but evidences a continuing retaliatory animus against the plaintiffs.

In addition to violating the clear spirit of the Order, Bay Pines' refusal to rotate Dr. Gowski through the MICU violates the plain language of the Order. The court's Order requires subsequent rotations for Dr. Gowski through the MICU "consistent with any nondiscriminatory practice then in effect at Bay Pines for rotating physicians." The Order does not refer to rotating "hospitalists." The Order refers to any nondiscriminatory practice for "rotating physicians." The court's Order is not limited to a rotation system set up regarding hospitalists, but requires Dr. Gowski's rotations (after the initial rotation) through the MICU "consistent with any nondiscriminatory practice in effect at Bay Pines VA for rotating physicians." Having heard the testimony at trial, the court was aware when it entered its Order that hospitalists were no longer being rotated through the MICU. Presumably, that is precisely why the Order does not refer to and is not limited to a rotation based on any present practice involving only hospitalists, but broadly refers to "rotating physicians." Moreover, the very reason Bay Pines quit rotating hospitalists through the MICU was, at its core, to retaliate against Dr. Gowski. Ironically, Bay Pines' ill-conceived and bad-faith position here is based on a situation (i.e. no present practice of rotating hospitalists through the MICU) which originally resulted from retaliation against Dr. Gowski.

At a minimum Bay Pines must be ordered to provide two month rotations to Dr. Gowski in the MICU every two months. However, Bay Pines' position here and failure to rotate Dr. Gowski through the MICU is a willful attempt to evade the court's order and evidences a continuing effort to retaliate against Dr. Gowski. In light of Bay Pines dismissive attitude towards the court's Order, its clear attempt to evade the spirit and plain terms of the Order and


frustrate the relief required by the court, and Bay Pines' continuing retaliation against Dr. Gowski, the court should remedy Bay Pines' bad faith and continuing retaliation and prevent future such issues by permanently reassigning Dr. Gowski to the MICU, which is basically the position she had prior to the retaliation against her.

In addition to constituting an appropriate remedy, permanently assigning Dr. Gowski to the MICU makes good sense. The MICU is now staffed by two pulmonologists who are typically rotated through the MICU every two months. First, because of her special training and interest, Dr. Gowski is more qualified than the pulmonologists to provide critical care in the MICU. Next, Bay Pines was short of physicians in the pulmonary section before Dr. Cote died on January 15, 2010. Prior to Dr. Cote's death, the pulmonary unit had asked that at least one additional pulmonologist be hired. Moreover, Dr. Lin asserted in a memorandum that he has developed an initiative "which includes establishing a COPD clinic."[2] See Ex. 1. Dr. Lin stated in the memorandum that "without the addition of another physician to the [pulmonary] section, this type of specialized clinic will not be feasible." Reassigning Dr. Gowski permanently back to the MICU would help free up the time that pulmonologists must spend in the MICU. This would help to resolve the problem of being short-handed in the pulmonary section. Moreover, it would help permit Dr. Lin to "implement" the COPD clinic, which is particularly fitting since Dr. Lin originally attempted to close down this clinic in retaliation against Dr. Cote. The fact that Dr. Lin is willing to jeopardize or reduce the effectiveness of a COPD clinic, which, according to

---

[2] Dr. Lin further stated that such "a specialized COPD clinic would provide physicians the opportunity to enhance the level of care that these patients receive" and that the "majority of COPD patients would greatly benefit from more frequent visits" and that [i]mproved medical management of this patient population would help to keep these patients out of the hospital, ultimately lowering readmission rates, costs and ED visits." This is quite a curious memo since it was Dr. Cote who recognized the need and developed the COPD clinic, which Dr. Lin tired to close and did significantly reduce in order to retaliate against her.

5

him, "would greatly benefit" the "majority of COPD patients," in order to keep Dr. Gowski out of the MICU is additional evidence of a continuing retaliatory attitude towards Dr. Gowski.

On April 20, 2010, the attorney for the Secretary advised the undersigned that Bay Pines would not rotate Dr. Gowski back to the MICU after her one rotation. In a subsequent conversation on the same day, the attorney noted that Bay Pines had advised him that the pulmonologists who are rotated through the MICU on a two month rotation also conduct clinics and that even if Dr. Gowski were rotated back to the MICU, she, like the pulmonologists, would only work part-time in the MICU during the rotation. This again shows Bay Pines continuing retaliatory attitude of trying to find any excuse not to comply with the relief ordered by the court and any excuse not to do anything that would advance Dr. Gowski's career or job satisfaction.

While the pulmonologists conduct a clinic on one day a week while rotating through the MICU, other pulmonologists are assigned to take the pulmonologist's spot in the MICU when the pulmonologist in the MICU is at the clinic. Obviously, if the pulmonologist had no clinic, the pulmonologist would be in the MICU on that day. So the actual practice is that the pulmonologist is in the MICU on a two-month rotation unless the pulmonologist has a clinic to attend. Since Dr. Gowski has no clinics to attend, the applicable practice would be for her to be in the MICU every day of the week during her rotation. Further, it makes no sense to only let her work part-time in the MICU other than to frustrate her and the relief ordered by the court.

As noted above, the court also ordered that Bay Pines was to cooperate with Dr. Gowski in obtaining necessary privileges for her rotation through the MICU. Dr. Gowski has been granted privileges to conduct various critical care procedures, but she has been required to perform them under supervision until she performs a number of the procedures. However, insufficient opportunities have been provided to Dr. Gowski to conduct such critical care

procedures under supervision, especially since Bay Pines will not rotate her back to the MICU. In short, Dr. Gowski has been set up for failure because Bay Pines will not put her in the MICU where she needs to be to doing the critical care procedures under supervision. Moreover, Dr. Gowski has sent emails to Dr. Lin requesting instruction regarding doing of the critical care procedures under supervision, but Dr. Lin has not responded to a single email.[3] This complete failure by Dr. Lin to cooperate or abide by the court's Order is also evidence of Bay Pines continuing retaliation towards Dr. Gowski.

### Other Efforts to Minimize the Court's Order and Maintain a Hostile Retaliatory Work Environment

The position of Bay Pines concerning Dr. Gowski's rotation through the MICU is part of other disturbing conduct which appear intended to minimize or frustrate this court's Order and to maintain the hostile retaliatory work environment. For example, VHA Directive 2009-057 requires the VA to take "corrective action and appropriate disciplinary action immediately where there has been a finding of retaliation or reprisal." It appears that Bay Pines has not taken any action whatsoever against Mr. Hopkins, Dr. Van Buskirk, Dr. Lin and Dr. Patel. This failure to take disciplinary action underlines and supports the argument above that the court should order that Dr. Gowski be permanently assigned to the MICU (as she had been prior to the retaliation).

Next, there was a Director's General Staff meeting at Bay Pines on January 7, 2010. Plaintiffs have been advised by two people that at that meeting, the Bay Pines EEO manager, Joan Harris, stated during her EEO update words to the effect, "Don't believe everything you read in the newspapers"[4] and "Bay Pines does not tolerate retaliation or reprisal against any

---

[3] Dr. Gowski has also made requests of Dr. Lin that she be allowed to be part of the hospitalists who teach and supervise residents when she is not in the MICU. However, Dr. Lin has also not responded to this request.
[4] The St. Petersburg Times reported the jury's verdict and the court's Order and ran an editorial critical of Bay Pines retaliatory conduct.

employee who files a discrimination complaint." Ms. Harris then commended the director, Mr. Hopkins, for his purportedly great leadership skills and presented him some type of EEO award. In other words, rather than discipline Mr. Hopkins, the VA gave him some type of EEO award. The timing (i.e. shortly after the court's Order) of this award and the comments by the Bay Pines EEO manager about Mr. Hopkins clearly show that they arose in response to the court's Order. In addition to attempting to trivialize the Order, such conduct only serves to maintain and enhance the hostile retaliatory work environment because it sends the message that those who retaliate will not only not be punished, but will be rewarded, even despite a court order attempting to remedy the retaliation.

Plaintiffs have also been advised that in June, 2010, in the context of waiting in a witness room to testify in an MSPB case filed by a Bay Pines police officer involving, in part, retaliation, Mr. Hopkins angrily told the Bay Pines chief of police that he did not care how many police officers the chief of police fired. Moreover, this intimidating statement has been disseminated among the police officers of the Bay Pines Police Service where there are many additional examples of direct and circumstantial evidence of retaliation by Bay Pines. See complaint in *Atkinson et al. v. Shinseki, etc.* 8:10-cv-1482-T33.

Plaintiffs have also been advised that at a Professional Standards Board meeting, Dr. Van Buskirk observed that the court got it wrong.

Plaintiffs have also been advised that when Dr. Van Buskirk attended the EEO training required by the court, he repeatedly stated that he did nothing wrong in the instant case.

In a recent deposition of Dr. Lin taken in another case on December 21, 2009, Dr. Lin maintained that he "never retaliated against anyone."

The court ordered that its Order in this case be posted at multiple appropriate locations throughout the Bay Pines VA hospital and health care system. First, the court's Order was reduced in size so that two pages appear on one page and the Order was posted within glass-enclosed boards which makes the court's Order difficult to read. Next, there are approximately twenty buildings on the Bay Pines campus with multiple floors and entrances. There are approximately eight outpatient clinics. The plaintiffs asked the government to place the Order on the physical and electronic bulletin boards used for employee announcements throughout the Bay Pines healthcare system. The court's Order was only placed in seven locations in five buildings throughout the Bay Pines campus and at only the Ft. Myers outpatient clinic. Many employee announcement boards were ignored. For example, the Order was placed on only the third floor of building 22 while there are many more employees on floors 1, 2 and 4. The Order was also placed outside the cafeteria in building 1, but not on floors two through 5 of building 1. In the main hospital the Order was placed only at three locations on the first floor near the rear entrances. The Order was not posted in many buildings, including, for example, building 11, which contains the Police Service which, as mentioned above, has a history of many EEO retaliation claims. Similarly, the Order has not been posted in any outpatient clinics other than Ft. Myers.

## Consultation

Counsel for Bay Pines in a telephone conference with the undersigned stated that the court would have to resolve this issue.

9

## Conclusion

For the reasons stated above, the court should order that Dr. Gowski be permanently reassigned to the MICU. In the alternative, the court should order that she be assigned to a two-month rotation through the MICU (i.e. two months full-time in the MICU every two months). Finally, the court should reiterate its Order that the personnel at Bay Pines, including especially Dr. Lin, are to cooperate in facilitating her efforts to obtain the necessary credentials for the MICU.

Respectfully submitted,

s/Joseph D. Magri
Joseph D. Magri
Florida Bar No.: 0814490
s/Ward A. Meythaler
Ward A. Meythaler
Florida Bar No.: 0832723
Attorney for Plaintiffs
Merkle Magri, & Meythaler, P.A.
5415 Mariner Street, Suite 103
Tampa, Florida 33609
Tel.: (813)281-9000
Fax.: (813)281-2223
E-mail: jmagri@merklemagri.com
wamsecy@merklemagri.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 23, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to:

Scott H. Park
Assistant United States Attorney
501 West Church Street, Suite 300
Orlando, Florida 32805

S/Joseph D. Magri
Joseph D. Magri
s/Ward A. Meythaler
Ward A. Meythaler

10